**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| BRUCE H. VOSS,<br>　　　　　　　*Petitioner-Appellant*,<br><br>　　　　　v.<br><br>COMMISSIONER OF INTERNAL<br>REVENUE,<br>　　　　　　　*Respondent-Appellee*. | No. 12-73257<br><br>Tax Ct. No.<br>16443-09 |

| | |
|---|---|
| CHARLES J. SOPHY,<br>　　　　　　　*Petitioner-Appellant*,<br><br>　　　　　v.<br><br>COMMISSIONER OF INTERNAL<br>REVENUE,<br>　　　　　　　*Respondent-Appellee*. | No. 12-73261<br><br>Tax Ct. No.<br>16421-09<br><br><br>OPINION |

Appeal from a Decision of the
United States Tax Court

Argued and Submitted
February 5, 2015—Pasadena, California

Filed August 7, 2015

Before: Michael J. Melloy,[*] Jay S. Bybee,
and Sandra S. Ikuta, Circuit Judges.

Opinion by Judge Bybee;
Dissent by Judge Ikuta

## SUMMARY[**]

### Tax

The panel reversed a Tax Court decision involving the debt limit provisions for unmarried co-owners seeking to deduct mortgage interest for their qualified residence.

The panel held that the debt limit provisions of 26 U.S.C. § 163(h)(3) apply on a per-taxpayer basis to unmarried co-owners of a qualified residence. The panel remanded for determination of the proper amount of interest that taxpayers are entitled to deduct.

Dissenting, Judge Ikuta would defer to the Internal Revenue Service's reasonable interpretation of an ambiguous statute, which interpretation would limit unmarried taxpayers in this situation to deducting the same amount as married taxpayers filing jointly.

---

[*] The Honorable Michael J. Melloy, Senior Circuit Judge for the U.S. Court of Appeals for the Eighth Circuit, sitting by designation.

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

**COUNSEL**

Emily J. Kingston (argued), Sideman & Bancroft LLP, San Francisco, California; Aubrey Hone, Hone Maxwell LLP, San Francisco, California, for Petitioners-Appellants.

Kathryn Keneally, Assistant Attorney General; Jonathan S. Cohen, John Schumann (argued), Attorneys, United States Department of Justice, Tax Division, Washington, D.C., for Respondent-Appellee.

Shannon P. Minter, Christopher F. Stoll, National Center for Lesbian Rights, San Francisco, California, for Amici Curiae Professors of Law.

---

**OPINION**

BYBEE, Circuit Judge:

This is a tax dispute brought by two unmarried co-owners of real property, Bruce Voss and Charles Sophy. For the 2006 and 2007 tax years, Voss and Sophy each claimed a home mortgage interest deduction under § 163(h)(3) of the Internal Revenue Code, which allows taxpayers to deduct interest on up to $1 million of home acquisition debt and $100,000 of home equity debt. After an audit, the IRS determined that Voss and Sophy were jointly subject to § 163(h)(3)'s $1 million and $100,000 debt limits and thus disallowed a substantial portion of their claimed deductions. Voss and Sophy challenged the IRS's assessment in Tax Court, arguing that the statute's debt limits apply per taxpayer such that they were entitled to deduct interest on up to $1.1

million of home debt each. The Tax Court agreed with the IRS.

We are now called upon to decide how § 163(h)(3)'s debt limit provisions apply when two or more unmarried co-owners of a residence claim the home mortgage interest deduction. Although the statute is silent as to unmarried co-owners, we infer from the statute's treatment of married individuals filing separate returns that § 163(h)(3)'s debt limits apply to unmarried co-owners on a per-taxpayer basis. We accordingly reverse the decision of the Tax Court and remand for a recalculation of petitioners' tax liability.

I

Section 163 of the Internal Revenue Code governs the deductibility of interest on a taxpayer's indebtedness. This section of the Tax Code, like much of the Code, is complex—it requires attention to definitions within definitions and exceptions upon exceptions. To assist the reader, we begin with a brief overview of the section's relevant provisions.

Section 163 begins with the general rule that interest on indebtedness is deductible. *See* 26 U.S.C. § 163(a). Subsection (h), however, provides that, "[i]n the case of a taxpayer other than a corporation," personal interest is not deductible. *See id.* § 163(h)(1) ("In the case of a taxpayer other than a corporation, no deduction shall be allowed under this chapter for personal interest paid or accrued during the taxable year."). Nevertheless, "personal interest" is defined rather technically as "any interest allowable as a deduction . . . other than" certain specified categories of interest. *See id.* § 163(h)(2). One of those carved-out categories is "any

qualified residence interest (within the meaning of paragraph (3))." *Id.* § 163(h)(2)(D).

Section 163(h)(3) thus provides that interest on a "qualified residence" is not "personal interest" and, accordingly, may be deducted by taxpayers who are not corporations. The Code defines "qualified residence" as the taxpayer's principal residence and "1 other residence of the taxpayer which is selected by the taxpayer for purposes of this subsection for the taxable year and which is used by the taxpayer as a residence." *Id.* § 163(h)(4)(A)(i).

"Qualified residence interest" encompasses interest payments on two types of debt: acquisition indebtedness and home equity indebtedness. *Id.* § 163(h)(3)(A). "Acquisition indebtedness" generally means debt incurred in, or that results from the refinancing of debt incurred in, "acquiring, constructing, or substantially improving" a qualified residence. *Id.* § 163(h)(3)(B)(i). "Home equity indebtedness" generally means indebtedness, other than acquisition indebtedness, that is secured by a qualified residence and that does not exceed the difference between the amount of acquisition indebtedness and the home's fair market value. *Id.* § 163(h)(3)(C)(i). A home equity line of credit is a typical example of home equity indebtedness. So, for example, if a taxpayer has a purchase money mortgage (or the refinancing of such a mortgage) on both a primary home and a summer home, she can deduct interest payments on both mortgages. She may also deduct the interest on any home equity line of credit on both residences.

Significantly, the statute does not allow taxpayers to deduct interest payments on an unlimited amount of acquisition and home equity indebtedness. Instead, the

statute limits "[t]he aggregate amount treated as acquisition indebtedness for any period" to $1,000,000 and "[t]he aggregate amount treated as home equity indebtedness for any period" to $100,000. *Id.* § 163(h)(3)(B)(ii), (C)(ii). "[I]n the case of a married individual filing a separate return," however, the statute reduces the debt limits to $500,000 and $50,000. *Id.* We shall refer to these provisions as the debt limit provisions.

If a taxpayer's total mortgage debt exceeds the debt limits, a Treasury regulation, 26 C.F.R. § 1.163-10T, provides the method for calculating qualified residence interest. Subsection (e) of that regulation sets out the usual method: qualified residence interest is calculated by multiplying the total interest paid by the ratio of the applicable debt limit over the total debt. *See id.* § 1.163-10T(e). For example, if a single individual has a $2 million mortgage and a $200,000 home equity line of credit, the ratio is 50%: $1.1 million (the total applicable debt limit under the statute) over $2.2 million (the total debt). Thus, the taxpayer is entitled to deduct 50% of whatever interest is paid or accrued during her taxable year.[1]

In sum, under § 163 and the applicable Treasury regulation, a taxpayer may deduct the interest paid on a mortgage or home equity line of credit for a principal residence and a second home. For taxpayers other than married individuals filing a separate return, the deduction is limited to interest paid on $1 million of mortgage debt and $100,000 of home equity debt. If the taxpayer's home indebtedness exceeds $1.1 million, then she is entitled to

---

[1] The regulation is silent as to how the deduction should be calculated in co-owner situations.

deduct a portion of her interest, determined by the ratio of the statutory debt limit divided by her total actual debt. If the taxpayer is married filing a separate return, the debt limit is $550,000.

Although the statute is specific with respect to a married taxpayer filing a separate return, the Code does not specify whether, in the case of residence co-owners who are not married, the debt limits apply per residence or per taxpayer. That is, is the $1.1 million debt limit the limit on the qualified residence, irrespective of the number of owners, or is it the limit on the debt that can be claimed by any individual taxpayer? That gap in the Code is the source of the present controversy.

## II

### A

Bruce Voss and Charles Sophy are domestic partners registered with the State of California. They co-own two homes as joint tenants—one in Rancho Mirage, California and the other, their primary residence, in Beverly Hills, California.

When Voss and Sophy purchased the Rancho Mirage home in 2000, they took out a $486,300 mortgage, secured by the property. Two years later, they refinanced that mortgage and obtained a new mortgage, also secured by the property, in the amount of $500,000. Voss and Sophy are jointly and severally liable for the refinanced Rancho Mirage mortgage.

Voss and Sophy purchased the Beverly Hills home in 2002. They financed the purchase of the Beverly Hills home

with a $2,240,000 mortgage, secured by the Beverly Hills property. About a year later, they refinanced the mortgage by obtaining a new loan in the amount of $2,000,000. Voss and Sophy are jointly and severally liable for the refinanced Beverly Hills mortgage, which, like the original mortgage, is secured by the Beverly Hills property. At the same time as they refinanced the Beverly Hills mortgage, Voss and Sophy also obtained a home equity line of credit of $300,000 for the Beverly Hills home. Voss and Sophy are jointly and severally liable for the home equity line of credit as well.

The total average balance of the two mortgages and the line of credit in 2006 and 2007 (the two taxable years at issue) was about $2.7 million—$2,703,568.05 in 2006 and $2,669,135.57 in 2007. Thus, whether § 163(h)(3)'s debt limit provisions are interpreted as applying per taxpayer (such that Voss and Sophy can deduct interest on up to $2.2 million of debt) or per residence (such that Voss and Sophy can deduct interest on up to $1.1 million of debt), it is in either event clear that Voss and Sophy's debt exceeds the statutory debt limits.

B

Voss and Sophy each filed separate federal income tax returns for taxable years 2006 and 2007. In their respective returns, Voss and Sophy each claimed home mortgage interest deductions for interest paid on the two mortgages and the home equity line of credit. The parties agree on the amounts of interest Voss and Sophy each paid for those years: Voss paid $85,962.30 in 2006 and $76,635.08 in 2007, and Sophy paid $94,698.33 in 2006 and $99,901.35 in 2007. The total interest paid was $180,660.63 in 2006 and $176,536.43 in 2007.

On their respective 2006 returns, Voss and Sophy each claimed a home mortgage interest deduction of $95,396, for a total of $190,792. Voss and Sophy now agree that this was at least $10,131.37 too much because Voss and Sophy together only paid $180,660.63 in interest that year. The additional amount represents interest that Voss paid on December 31, 2005, and was thus not deductible by either Voss or Sophy for taxable year 2006. For taxable year 2007, Voss and Sophy claimed less mortgage interest than they actually paid—Voss claimed a deduction of $88,268, and Sophy claimed a deduction of $65,614.

The IRS audited the 2006 and 2007 returns and, in 2009, assessed notices of deficiency to Voss and Sophy. The IRS calculated each petitioner's mortgage interest deduction by applying a limitation ratio to the total amount of mortgage interest that each petitioner paid in each taxable year. The limitation ratio was the same for both Voss and Sophy: $1.1 million ($1 million of home acquisition debt plus $100,000 of home equity debt) over the entire average balance, for each taxable year, on the Beverly Hills mortgage, the Beverly Hills home equity line of credit, and the Rancho Mirage mortgage.

Using that method, the IRS concluded that Voss was allowed to deduct $34,975 in 2006 and $31,583 in 2007. The IRS thus disallowed $60,421 of Voss's claimed deduction in 2006 and $56,685 of his claimed deduction in 2007. The IRS also found Sophy's returns deficient. The IRS concluded that Sophy was allowed to deduct $38,530 in 2006 and $41,171 in 2007. The IRS thus disallowed $56,866 of Sophy's claimed deduction in 2006 and $24,443 of his claimed deduction in 2007.

C

Voss and Sophy each filed a petition with the Tax Court, and the two cases were consolidated for joint consideration. The Tax Court granted the parties' joint motion to submit the cases for decision without trial and on the basis of stipulated facts and exhibits, and directed the parties to submit proposed computations for entry of decision.

Based on the stipulated facts, exhibits, and proposed computations submitted by the parties, the Tax Court reached a decision and issued an opinion in the IRS's favor. The Tax Court framed the question presented as "whether the statutory limitations on the amount of acquisition and home equity indebtedness with respect to which interest is deductible under section 163(h)(3) are properly applied on a per-residence or per-taxpayer basis when residence co-owners are not married to each other." *Sophy v. Comm'r*, 138 T.C. 204, 209 (2012).

The Tax Court began its analysis by looking to the definitions of acquisition indebtedness and home equity indebtedness in § 163(h)(3)(B)(i) and (C)(i).[2] *Id.* at 210. The Tax Court noted that the term "any indebtedness" in both definitions is not qualified by language relating to an

---

[2] "Acquisition indebtedness" is defined as "any indebtedness which (I) is incurred in acquiring, constructing, or substantially improving any qualified residence of the taxpayer, and (II) is secured by such residence." 26 U.S.C. § 163(h)(3)(B)(i). "Home equity indebtedness" is defined as "any indebtedness (other than acquisition indebtedness) secured by a qualified residence to the extent the aggregate amount of such indebtedness does not exceed (I) the fair market value of such qualified residence, reduced by (II) the amount of acquisition indebtedness with respect to such residence." *Id.* § 163(h)(3)(C)(i).

individual taxpayer (as in "any indebtedness *of the taxpayer*"). *Id.* The Tax Court also pointed out that the phrase "of the taxpayer" in the definition of acquisition indebtedness "is used only in relation to the qualified residence [as in "qualified residence *of the taxpayer*"], not the indebtedness." *Id.*

The Tax Court then examined the definition of qualified residence interest.[3] *Id.* The Tax Court noted that the phrase "with respect to any qualified residence" in that definition appeared to be superfluous, as acquisition indebtedness and home equity indebtedness were already defined in relation to a qualified residence. *Id.* at 211. The Tax Court nevertheless found that the phrase was not superfluous because, in its view, "Congress used these repeated references to emphasize the point that qualified residence interest and the related indebtedness limitations are residence focused rather than taxpayer focused." *Id.* at 212.

The Tax Court further reasoned that the married-person parentheticals were consistent with its per-residence interpretation, as the parentheticals made clear that married couples—whether filing separately or jointly—are, as a couple, limited to deducting interest on $1 million of acquisition indebtedness and $100,000 of home equity indebtedness. *Id.* The purpose of the parentheticals, the Tax Court explained, was simply

---

[3] "Qualified residence interest" is defined as "any interest which is paid or accrued during the taxable year on . . . acquisition indebtedness [or home equity indebtedness] with respect to any qualified residence of the taxpayer." *Id.* § 163(h)(3)(A).

> to set out a specific allocation of the limitation amounts that must be used by married couples filing separate tax returns, thus implying that co-owners who are not married to one another may choose to allocate limitation amounts among themselves in some other manner, such as according to percentage of ownership.

*Id.* at 213.

Noting that nothing in the legislative history of § 163(h)(3) suggested any contrary intention, the Tax Court concluded that "the limitations in section 163(h)(3)(B)(ii) and (C)(ii) on the amounts that may be treated as acquisition and home equity indebtedness with respect to a qualified residence are properly applied on a per-residence basis." *Id.*

We have jurisdiction to review the decisions of the Tax Court "in the same manner and to the same extent as decisions of the district courts in civil actions tried without a jury." 26 U.S.C. § 7482(a)(1). Accordingly, we review the Tax Court's factual findings for clear error, and we review the Tax Court's conclusions of law—including its interpretation of the Internal Revenue Code—de novo. *Suzy's Zoo v. Comm'r*, 273 F.3d 875, 878 (9th Cir. 2001).

III

We are asked to decide an issue of first impression: When multiple unmarried taxpayers co-own a qualifying residence, do the debt limit provisions found in 26 U.S.C. § 163(h)(3)(B)(ii) and (C)(ii) apply per taxpayer or per

residence? We conclude that § 163(h)'s debt limits apply per taxpayer.[4]

## A

We begin with the text of the key provisions at issue—§ 163(h)(3)'s debt limit provisions. They provide:

> (B) Acquisition indebtedness.—
>
> . . .
>
> (ii) $1,000,000 Limitation.—The aggregate amount treated as acquisition indebtedness for any period shall not exceed $1,000,000 ($500,000 in the case of a married individual filing a separate return).
>
> (C) Home equity indebtedness.—
>
> . . .
>
> (ii) Limitation.—The aggregate amount treated as home equity indebtedness for any period shall not exceed $100,000 ($50,000 in

---

[4] The parties agree that both of petitioners' homes are qualified residences under § 163(h)(4)(A)(i), that both refinanced mortgages qualify as acquisition indebtedness under § 163(h)(3)(B)(i), and that petitioners' home equity line of credit qualifies as home equity indebtedness under § 163(h)(3)(C)(i).

the case of a separate return by a married
individual).

*Id.* § 163(h)(3)(B)(ii), (C)(ii).

The parties dispute whether the $1 million and $100,000
debt limits in these provisions apply per taxpayer or per
residence. If they apply per taxpayer, then Voss and Sophy
are each entitled to a $1.1 million debt limit, such that
together they can deduct interest payments on up to $2.2
million of acquisition and home equity debt. If the debt limit
provisions apply per residence, as the Tax Court held, then
the $1 million and $100,000 debt limits must be divided up in
some way between Voss and Sophy.

Discerning an answer from § 163(h) requires considerable
effort on our part because the statute is silent as to how the
debt limits should apply in co-owner situations.[5] Both
provisions limit "[t]he aggregate amount treated" as
acquisition or home equity debt, but neither says to whom or
what the limits apply. Had Congress wanted to make clear
that the debt limits apply per taxpayer, it could have drafted
the provisions to limit "the aggregate amount *each taxpayer*
may treat as" acquisition or home equity debt. But it did not.
Or, had Congress wanted to make clear that the debt limits
apply per residence, it could have provided that the debt
limits must be divided or allocated in the event that two or

---

[5] The relevant Treasury regulation, 26 C.F.R. § 1.163-10T, is also silent
in this regard. The regulation provides a method of calculating qualified
residence interest when the home debt exceeds the applicable debt limits
in the statute, *see id.* § 1.163-10T(e), but it says nothing about how
qualified residence interest should be calculated when there are multiple
co-owners, whether married or unmarried.

more unmarried individuals co-own a qualified residence. *Cf.*
26 U.S.C. § 36(a)(1)(C) ("If two or more individuals who are
not married purchase a principal residence, the amount of the
[first-time homebuyer] credit allowed . . . shall be allocated
among such individuals in such manner as the Secretary may
prescribe, except that the total amount of the credits allowed
to all such individuals shall not exceed $8,000"). But, again,
it did not.

Although Congress did neither of these things, we are not
altogether without textual guidance. The statute is *mostly*
silent about how to deal with co-ownership situations, but it
is not *entirely* silent. Both debt limit provisions contain a
parenthetical that speaks to one common situation of co-
ownership: married individuals filing separate returns. *See
id.* § 163(h)(3)(B)(ii), (C)(ii). The parentheticals provide
half-sized debt limits "in the case of a married individual
filing a separate return." *Id.*[6] Congress's use of the phrase
"in the case of" is important. It suggests, first, that the
parentheticals contain an exception to the general debt limit
set out in the main clause, not an illustration of how that
general debt limit should be applied. At the same time, the
phrase "in the case of" also suggests a certain parallelism
between the parenthetical and the main clause of each
provision: other than the debt limit amount, which differs, we
can expect that in all respects the case of a married individual
filing a separate return should be treated like any other case.
It is thus appropriate to look to the parentheticals when
interpreting the main clauses' general debt limit provisions.
These parentheticals offer us at least three useful insights.

---

[6] For no apparent reason that we can tell, (C)(ii)'s parenthetical is
worded differently. It states, "$50,000 in the case of *a separate return by
a married individual*." 26 U.S.C. § 163(h)(3)(C)(ii) (emphasis added).

First, the parentheticals clearly speak in per-taxpayer terms: the limit on acquisition indebtedness is "$500,000 in the case of *a married individual* filing a separate return," *id.* § 163(h)(3)(B)(ii) (emphasis added), and the limit on home equity indebtedness is "$50,000 in the case of a separate return by *a married individual*," *id.* § 163(h)(3)(C)(ii) (emphasis added). And they speak in such terms even though married individuals commonly (and perhaps usually) co-own their homes and are jointly and severally liable on any mortgage debt. Had Congress wanted to draft the parentheticals in per-residence terms, doing so would not have been particularly difficult. Congress could have written, "in the case of any qualified residence of a married individual filing a separate return." Yet, once again, Congress did not draft the statute in that way. The per-taxpayer wording of the parentheticals, considered in light of the parentheticals' use of the phrase "in the case of," thus suggests that the wording of the main clause—in particular, the phrase "aggregate amount treated"—should likewise be understood in a per-taxpayer manner.

Second, the parentheticals don't just speak in per-taxpayer terms; they operate in a per-taxpayer manner. The parentheticals give each separately filing spouse a separate debt limit of $550,000 so that, together, the two spouses are effectively entitled to a $1.1 million debt limit (the normal limit for single taxpayers). They do not subject both spouses jointly to the $550,000 debt limit specified in the statute. Were the parentheticals to work in that way, the result would be quite anomalous. Rather than ensuring that a married couple filing separate returns is treated the same as a couple filing a joint return, the parentheticals, under a per-residence reading, would result in disparate treatment of married couples filing separate returns. The separately filing couple

would have a $550,000 debt limit, whereas the jointly filing couple, and even the single individual, would have a $1.1 million debt limit.[7]

This is surely not what the statute intended, and we don't understand the Tax Court or the IRS to say otherwise. Quite to the contrary, both acknowledge that the parentheticals' lower limits apply per spouse—which is just another way of saying per taxpayer. *See Sophy*, 138 T.C. at 212 (interpreting the married-person parentheticals to mean that "married taxpayers who file separate returns are limited to acquisition indebtedness of $500,000 *each*" and "to home equity indebtedness of $50,000 *each*" (emphasis added)); *see also Bronstein v. Comm'r*, 138 T.C. 382, 386 (2012) ("[T]he parenthetical indebtedness limitations of section 163(h)(3)(B)(ii) and (C)(ii) are $550,000 for *each spouse* filing a separate return." (emphasis added)). And if the debt limits for spouses filing separately apply per spouse, we see no reason in the statute why the debt limits for unmarried individuals should not apply per unmarried individual.[8] The

---

[7] *See Pau v. Comm'r*, 73 T.C.M. (CCH) 1819, 1826 (1997) (holding that a married couple filing a joint return can deduct "interest paid on $1 million of acquisition indebtedness").

[8] The dissent does not disagree with this logic. *See* Dissent at 46–47 (noting that if the married-person parenthetical were interpreted in a per-taxpayer manner, "married taxpayers filing separately would deduct the same amount of interest as married taxpayers filing jointly"). Instead, the dissent attacks our premise—i.e., that the married-person parenthetical operates per taxpayer, not per residence. *See id.* at 47–49 (interpreting the married-person parenthetical as imposing a "penalty on married individuals for filing separately" by limiting separately filing spouses to a combined debt limit of $550,000). As we have explained, however, the dissent's view runs contrary not only to the statute's text ("in the case of

per-taxpayer operation of the debt limits for married individuals filing separately thus suggests that the general debt limits also operate per taxpayer.

Third, and finally, the very inclusion of the parentheticals suggests that the debt limits apply per taxpayer. "It is a well-established rule of statutory construction that courts should not interpret statutes in a way that renders a provision superfluous." *Chubb Custom Ins. Co. v. Space Sys./Loral, Inc.*, 710 F.3d 946, 966 (9th Cir. 2013), *cert. denied*, 134 S. Ct. 906 (2014). If the $1.1 million debt limit truly applied per residence, as the Tax Court held it does, the parentheticals would be superfluous, as there would be no need to provide that two spouses filing separately get $550,000 each. If the $1.1 million debt limit applies per taxpayer, by contrast, the parentheticals actually do something: they give each separately filing spouse half the debt limit so that the separately filing couple is, as a unit, subject to the same debt limit as a jointly filing couple.

The Tax Court interpreted the married-person parentheticals differently. The purpose of the parentheticals, according to the Tax Court, is not to lower the debt limits for spouses filing separate returns—the spouses are already jointly subject to the $1.1 million debt limit. Rather, the Tax Court explained,

> this language simply appears to set out a *specific allocation* of the limitation amounts that must be used by married couples filing separate tax returns, thus implying that co-

---

a married *individual* filing a separate return") but also to the IRS's own uncontested interpretation of the statute.

owners who are not married to one another may choose to allocate the limitation amounts among themselves in some other manner, such as according to percentage of ownership.

*Sophy*, 138 T.C. at 213 (emphasis added).

We find this interpretation unpersuasive. In particular, we think it unlikely that Congress would go out of its way to prevent spouses (and only spouses) from allocating § 163(h)(3)'s debt limit amounts, especially when in most cases spouses presumably own their home as equal partners. The much more likely intent of the parentheticals, we think, is to ensure that married couples filing a separate return are treated the same, for purposes of § 163(h)(3), as married couples filing a joint return—in other words, to ensure that *all* married couples, not just joint filers, are treated as though they were a single taxpayer.

Section 163(h)(3) is not the only provision in the Tax Code that does this. Congress has on a number of occasions provided half-sized deductions, credits, or limits for separately filing spouses. *See, e.g.*, 26 U.S.C. § 22(c)(2)(A) (providing an initial credit of $7,500 to a qualifying married couple filing jointly and "$3,750 in the case of a married individual filing a separate return"), *id.* § 1202(b) (providing that, for purposes of the Code's exclusion for gain from certain small business stock, the $10 million limitation on eligible gain is reduced to $5 million "[i]n the case of a separate return by a married individual"), *id.* § 1211(b) (limiting allowable net capital losses to "$3,000 ($1,500 in the case of a married individual filing a separate return)").

The purpose of these provisions is obvious. In each provision, each taxpayer gets some tax benefit—a credit, an exclusion up to some limit, allowable losses up to some limit, or, here, a deduction on interest on home debt up to some limit. Congress, knowing that joint filers are treated as a single taxpayer and that separate filers are treated as two separate taxpayers, wants to ensure that the separately filing spouses don't get double the benefit that jointly filing couples get. And so, in each of these provisions, Congress provides that separately filing spouses each get half the benefit. The intent of these provisions is not to prevent separately filing spouses from allocating the benefit; it is to ensure that the separately filing spouses don't get double the credit, the exclusion, the losses, or the debt limit that the jointly filing couple gets.**[9]**

If Congress wants to go further and ensure that two or more *unmarried* taxpayers are treated as a single taxpayer for purposes of a particular deduction or credit, it can do that too. And it has. Take § 36 of the Tax Code, for example. That section sets an $8,000 limit on the first-time homebuyer credit but adds two caveats. *See id.* § 36(b)(1). The first caveat is very similar to (and, indeed, has much of the same language as) the limitation provisions here. The statute states, "In the case of a married individual filing a separate

---

**[9]** That said, Congress usually accomplishes this purpose by giving each spouse half the tax benefit that the jointly filing couple gets. That may mean that if a married couple has a large mortgage and files separate returns, but only one spouse seeks the benefit, the couple may, all counted, only get half the benefit it would have received had the couple filed jointly. *See, e.g.*, *Bronstein*, 138 T.C. at 384, 386 (holding that the clear language of § 163(h)(3) limited a spouse filing a separate return to $550,000 of debt even though she paid all of the mortgage interest and her husband was unable to seek the deduction).

return, subparagraph (A) [the provision containing the $8,000 cap] shall be applied by substituting '$4,000' for '$8,000.'" *Id.* § 36(b)(1)(B). But, unlike the limitation provisions here, § 36 does not stop there. It has an additional provision—the second caveat—which states:

> If two or more individuals *who are not married* purchase a principal residence, the amount of the credit allowed . . . shall be allocated among such individuals in such manner as the Secretary may prescribe, except that the total amount of the credits allowed to all such individuals shall not exceed $8,000.

*Id.* § 36(b)(1)(C) (emphasis added).

As § 36 makes clear, Congress knows how to treat a group of unmarried taxpayers as a single taxpayer for purposes of a particular tax benefit or burden. Congress could have done so here, but tellingly it did not. Instead, Congress did what it has done many times before, using the same language it has used before: It eliminated what would otherwise be a significant discrepancy between separately filing and jointly filing married couples by expressly reducing the debt limits for spouses filing separately.

In sum, the married-person parentheticals' language, purpose, and operation all strongly suggest that § 163(h)(3)'s debt limit provisions apply per taxpayer, not per residence. Absent some contrary indication in the statute, then, we shall read the debt limit provisions as applying on a per-taxpayer basis.

B

The Tax Court rejected a per-taxpayer reading of the debt limit provisions because it discerned in § 163(h)(3) a general "focus" on the qualified residence, *Sophy*, 138 T.C. at 210, and a "conspicuous[] absen[ce]" of "any reference to an individual taxpayer," *id.* at 211. Because the debt limit provisions do not speak directly to the situation of unmarried co-owners, it was reasonable for the Tax Court to look beyond those provisions in an effort to understand how the provisions should be applied. Ultimately, however, these other provisions of the statute do not sway us.

The Tax Court focused on three provisions in the statute, all definitions: first, the definition of qualified residence interest as "any interest which is paid or accrued during the taxable year on[] acquisition [or home equity] indebtedness *with respect to any qualified residence of the taxpayer*," 26 U.S.C. § 163(h)(3)(A) (emphasis added); second, the, definition of acquisition indebtedness as "any indebtedness which[] is incurred in acquiring, constructing, or substantially improving *any qualified residence of the taxpayer*," *id.* § 163(h)(3)(B)(i) (emphasis added); and third, the definition of home equity indebtedness as "any indebtedness (other than acquisition indebtedness) secured by *a qualified residence*," *id.* § 163(h)(3)(C)(i) (emphasis added). *Sophy*, 138 T.C. at 210–11. In each definition, the Tax Court highlighted the reference to the qualified residence and noted that the taxpayer was only ever mentioned with respect to the residence, not with respect to the indebtedness. *Id.*

We, however, do not find the statute's focus on the residence or lack of focus on the taxpayer particularly compelling. As for the repeated references to the residence,

it is only natural that a statute providing a deduction on "qualified residence interest" will focus on indebtedness with respect to a qualified residence. Indeed, for the most part, the statute's references to the "qualified residence" are entirely necessary; take those references out, and the statute would change meaning or make little sense.

The Tax Court did identify a few instances where a prepositional phrase involving the residence (such as "with respect to any qualified residence") could have been safely omitted and was thus arguably superfluous, *id.* at 211–12, but the same could be said of other prepositional phrases involving the taxpayer (such as "of the taxpayer").[10] In all likelihood, these phrases, though technically unnecessary, were included simply to ease the reader's understanding of a complex tax statute full of technical definitions. (We certainly appreciate their inclusion.) And, in any case, if there is a plausible inference to be drawn from those few stray prepositional phrases, it is overcome by the clear implications of the married-person parentheticals discussed above. Thus, in our view the statute's focus on the residence

---

[10] The statute's definition of qualified residence interest is instructive. The statute defines that term to include interest on "acquisition indebtedness *with respect to any qualified residence of the taxpayer*." 26 U.S.C. § 163(h)(3)(A)(i) (emphasis added). As the Tax Court pointed out, *Sophy*, 138 T.C. at 211, the phrase "with respect to any qualified residence" appears to be redundant because acquisition indebtedness is defined as indebtedness "incurred in acquiring . . . *any qualified residence of the taxpayer*," 26 U.S.C. § 163(h)(3)(B)(i) (emphasis added). Notably, however, the phrase "of the taxpayer" is also unnecessary because qualified residence is defined as "the principal residence . . . *of the taxpayer*" and "[one] other residence *of the taxpayer*." *Id.* § 163(h)(4)(A)(i) (emphasis added). Indeed, "of the taxpayer" is twice redundant: it is unnecessarily included in both the definition of qualified residence interest and the definition of acquisition indebtedness.

says little about how the debt limit provisions should be applied.

Nor do we find the occasional omission of the word "taxpayer" particularly telling. To begin with, two of the three definitions identified by the Tax Court *do* refer to the taxpayer, and all three depend on the definition of "qualified residence," which itself refers to the taxpayer (for more on the definition of "qualified residence," see the next section below). Setting to the side those references to the taxpayer, it is true that the three definitions identified by the Tax Court—just like the debt limit provisions in (h)(3)(B)(ii) and (C)(ii)—do not specify *who* paid the interest, *who* incurred the indebtedness, and *whose* indebtedness was secured by a qualified residence. But when we look at the rest of § 163 (and, we suspect, the rest of the Tax Code), the omission of the word "taxpayer" is anything but conspicuous. Note, for example, how the word "taxpayer" is missing from the first line of § 163, which states, "There shall be allowed as a deduction all interest paid or accrued within the taxable year on indebtedness." *Id.* § 163(a). There is no need for the sentence to say, "There shall be allowed as a deduction *to the taxpayer* all interest paid *by the taxpayer* within the *taxpayer's* taxable year on *the taxpayer's* indebtedness." Any reasonable reader would understand that the statute is speaking of a taxpayer.

Or take the first line of § 163(h). It states that "no deduction shall be allowed under this chapter for personal interest paid or accrued during the taxable year." *Id.* § 163(h)(1). Again, the reader easily intuits that the statute refers to a taxpayer's deduction, a taxpayer's personal interest payments, and a taxpayer's taxable year. Indeed, there can be no doubt that is what (h)(1) means because the statement just

quoted follows the phrase, "In the case of a *taxpayer* other than a corporation." *Id.* (emphasis added).

Thus, although we do not fault the Tax Court for looking to other provisions in the statute for guidance, we would place little weight on the statute's general focus on the residence or its repeated omission of reference to the taxpayer. If anything, these other provisions reinforce our per-taxpayer reading; they reveal that the debt limit provisions' omission of the word "taxpayer" is actually quite ordinary in the context of the broader statute.

C

Not only does nothing in the statute compel the Tax Court's per-residence reading; several of the statute's provisions point the other way. We have already noted one example: by speaking and operating in a per-taxpayer manner, the married-person parentheticals suggest that the general debt limits also apply per taxpayer. Two other provisions also warrant attention.

First, we are guided by the statute's repeated references to a single "taxable year." Section 163(h) begins by stating that "no deduction shall be allowed under this chapter for personal interest paid or accrued during *the taxable year*." *Id.* § 163(h)(1) (emphasis added). Likewise, § 163(h)(3) begins by defining qualified residence interest as any interest on acquisition or home equity debt "which is paid or accrued during *the taxable year*." *Id.* § 163(h)(3)(A). Indeed, the very provisions at issue, the debt limit provisions, cap the allowable amount of home debt "for any period"—the word "period" clearly referring to the "taxable year" mentioned earlier in (h)(3). *Id.* § 163(h)(3)(B)(ii), (C)(ii).

Residences do not have taxable years; only taxpayers do. And, importantly, taxpayers can have different taxable years. *See* 26 U.S.C. § 441(b) (providing that a taxpayer's taxable year may vary depending on the taxpayer's annual accounting period). Yet § 163(h) speaks in terms of a *single* taxable year, thus implying that the debt limits apply per taxpayer. If Congress truly intended to imply that § 163(h)(3)'s debt limits apply per residence by broadly focusing on the residence and consistently ignoring the taxpayer, it seems unlikely to us that it would at the same time define qualified residence interest with respect to a single taxable year.

Moreover, it is unclear how co-owners with different taxable years could even determine "[t]he aggregate amount treated as acquisition indebtedness for any period" under a per-residence approach. Does one co-owner's tax period control? Or do the co-owners have to figure out some way of accounting for both tax periods? (Keep in mind that mortgage balances usually change monthly.) These difficult questions go away, however, when the debt limits are read to apply per taxpayer. Each co-owner simply determines the interest paid and the average mortgage debt during his or her own tax period.

The Tax Court's per-residence reading is also hard to square with the statute's definition of "qualified residence." Somewhat counter-intuitively, the term "qualified residence" can include one *or two* residences: "the principal residence (within the meaning of section 121) of the taxpayer," and "1 other residence of the taxpayer which is selected by the taxpayer for purposes of this subsection for the taxable year and which is used by the taxpayer as a residence (within the meaning of section 280A(d)(1))." *Id.* § 163(h)(4)(A)(i). Contrary to the Tax Court's per-residence reading of the

statute, the term "qualified residence" clearly focuses on the taxpayer. The term includes the principal residence "of the taxpayer" and one other residence "of the taxpayer" that is "used by the taxpayer as a residence" and is "selected by the taxpayer." *Id.* The term also specifies that the taxpayer may select the secondary residence "for the taxable year," *id.*, suggesting that a taxpayer who owns multiple secondary residences can change his or her "1 other residence" from one tax year to the next.

More than just focusing on the taxpayer, the term "qualified residence" also highlights the impracticality of the Tax Court's approach. As the term "qualified residence" is defined, it is entirely possible that two residence co-owners might each have a different "qualified residence." For example, two individuals might each have a separate primary residence but go in together on a vacation home in Maui. For such co-owners, filing tax returns under the Tax Court's per-residence approach would be like running a three-legged race. The co-owners are tied together for one home but not the other. This would mean that the two (or it could be three or four) co-owners would have to coordinate their tax returns to ensure that the aggregate amount of acquisition debt for each taxpayer's "qualified residence" does not exceed $1 million. It would also mean that one co-owner's deduction might depend on the size of another co-owner's mortgage on a home in which the first co-owner has no interest. Under a per-taxpayer approach, by contrast, determining the amount of acquisition debt is free of such difficulties. Each taxpayer can calculate the deduction with reference to his or her respective two residences.

These provisions—the married-person parentheticals, the repeated references to the single "taxable year," and the

taxpayer-specific definition of "qualified residence"—are at odds with the Tax Court's per-residence reading of § 163(h)(3). Each provision focuses on the individual taxpayer, and the impracticality of applying the provisions under a per-residence approach suggests that Congress never intended that approach. We thus conclude that a per-taxpayer reading of the statute's debt limit provisions is most consistent with § 163(h)(3) as a whole.[11]

IV

The IRS argues that applying § 163(h)(3)'s debt limit provisions on a per-taxpayer basis creates a marriage penalty. We agree that it does, but we do not believe the marriage penalty is as significant a concern as the IRS urges.

---

[11] As the Treasury regulation's formula set out in 26 C.F.R. § 1.163-10T(e) only addresses the situation of a single taxpayer, the formula may need to be adjusted to account for the situation of separately filing co-owners, whether married or unmarried. *See* Dissent at 47 (suggesting that, if married individuals filing separately are to receive the same combined debt limit as a married couple filing jointly, the IRS would presumably have to "allow [each] married taxpayer filing separately to deduct his or her own interest payments on the debt in the proportion of $550,000 divided by one half of the total debt secured by the qualified residence"). We leave it to the IRS to develop in the first instance a workable methodology for separately filing co-owners.

The dissent also disputes our conclusion that the regulation fails to address the situation presented here, relying on the IRS's conclusion "that the regulation does apply to co-owners." Dissent at 38 n.1 (citing IRS CCA 200911007, 2009 WL 641772). But whether the IRS has interpreted its own regulation in this manner is of little import where its reasoning for doing so is a short-shrift interpretation of a statute in an opinion lacking the force of law. *See* Maj. Op. at 31–32.

Congress may have had perfectly legitimate reasons for distinguishing between married and unmarried taxpayers. Married individuals, unlike unmarried individuals, have the option under the Tax Code of filing a joint return. This option offers significant benefits—in particular, lower tax rates at various levels of income. But it's not all honeymoon; filing jointly also comes with certain drawbacks. A couple filing a joint return might, for example, receive one $1,000 tax credit where the same couple filing separate tax returns might receive two $1,000 credits. It would appear that, in Congress's view, the home mortgage interest deduction is one such drawback. If two individuals who are engaged to be married each own their own house and each have their own $1 million mortgage, both get to deduct all of their interest. But if they get married and file a joint return, they are treated as one taxpayer and can then only deduct half of their interest. *See Pau*, 73 T.C.M. (CCH) at 1819, 1826. This is a marriage penalty, but Congress presumably allows the marriage penalty because the couple also receives offsetting benefits available only to married couples filing a joint return.

Of course, a married couple filing separate returns does not receive the benefits of filing a joint return. Is it unfair, then, that they are treated as a single taxpayer while the unmarried couple is not? Perhaps not, for the married couple, unlike the unmarried couple, can usually elect to file a joint return. And perhaps Congress did not want separately filing married couples to have a significant advantage over jointly filing married couples.

We have already explained that the apparent purpose of the married-person parentheticals is to ensure that married couples are treated as a single taxpayer for purposes of the home mortgage interest deduction regardless of whether they

file separately or jointly. And the same purpose is evident in other provisions as well. For example, the statute provides that married couples filing separate returns generally "shall be treated as 1 taxpayer" for purposes of the definition of qualified residence. 26 U.S.C. § 163(h)(4)(A)(ii)(I). Like the debt limit provisions, this provision does not explicitly say whether the same is true of married couples filing a joint return, but we can reasonably infer that Congress also intended to treat jointly filing couples as a single taxpayer. *See* IRS Field Service Advisory No. 200137033 (Sept. 14, 2001) (opining, non-precedentially, that "[a]lthough § 163(h)(4)(A) does not specifically state that a married couple filing jointly is treated as one taxpayer for purposes of determining their mortgage interest deductions, we assume that Congress did not intend to treat married couples filing jointly differently than married couples filing separately").

We thus agree that the debt limit provisions of § 163(h)(3) result in a marriage penalty; but we are not particularly troubled. Congress may very well have good reasons for allowing that result, and, in any event, Congress clearly singled out married couples for specific treatment when it explicitly provided lower debt limits for married couples yet, for whatever reason, did not similarly provide lower debt limits for unmarried co-owners.

V

The dissent urges us to defer to the IRS's interpretation of the statute in a 2009 Chief Counsel Advice memorandum. Dissent at 43. The memorandum, like the Tax Court below, adopts a per-residence interpretation of § 163(h)(3)'s debt limit provisions. Its statutory analysis consists of one paragraph, which reads:

Under § 163(h)(3)(B)(i), acquisition indebtedness is defined, in relevant part, as indebtedness incurred in acquiring a qualified residence of the taxpayer—not as indebtedness incurred in acquiring [a] taxpayer's *portion* of a qualified residence. The entire amount of indebtedness incurred in acquiring the qualified residence constitutes "acquisition indebtedness" under § 163(h)(3)(A)(i). . . . [U]nder § 163(h)(3)(B)(ii), the amount *treated* as acquisition indebtedness for purposes of the qualified residence interest deduction is limited to $1,000,000 of total, "aggregate" acquisition indebtedness. This is evident from the parenthetical in § 163(h)(3)(B)(ii) which limits the aggregate treated as acquisition indebtedness to $500,000 for a married taxpayer filing a separate return.

IRS Chief Counsel Advice No. 200911007, at 4 (Mar. 13, 2009).

As the dissent acknowledges, the IRS's Chief Counsel Advice is only entitled to the "measure of deference proportional to the 'thoroughness evident in its consideration, the validity of its reasoning, its consistency with earlier and later pronouncements, and all those factors which give it power to persuade.'" *Christopher v. SmithKline Beecham Corp.*, 132 S. Ct. 2156, 2168–69 (2012) (quoting *United States v. Mead Corp.*, 533 U.S. 218, 228 (2001)); *see also Christensen v. Harris Cnty.*, 529 U.S. 576, 587 (2000) ("Interpretations such as those . . . in policy statements, agency manuals, and enforcement guidelines, all of which

lack the force of law—do not warrant *Chevron*-style deference.").

A review of these factors suggests the 2009 Chief Counsel Advice should be given limited weight. To start, the 2009 Chief Counsel Advice is hardly thorough or exhaustive—its analysis interpreting how the statute should apply to unmarried co-owners consists of just one paragraph. It treats the question as one governed by the "plain language of the statute," IRS Chief Counsel Advice No. 200911007, at 4, yet as our exchange, the briefs of the parties, the Tax Court's decision, and the statute itself demonstrate, it is anything but "plain." The Chief Counsel Advice does not grapple with the statute's taxpayer-specific definition of "qualified residence" or repeated references to a taxpayer's taxable year, nor does it explain how the married-person parenthetical is anything but surplusage under a per-residence reading of the statute.

As for consistency, the situation here is a far cry from that in *Hall v. United States*, 132 S. Ct. 1882, 1890 (2012), a case the dissent cites. *See* Dissent at 38 n.2. In *Hall*, the Supreme Court "s[aw] no reason to depart from those established understandings" of bankruptcy courts, bankruptcy commentators, and the IRS's consistent position for over a decade in an IRS Chief Counsel Advice memorandum, the Internal Revenue manual, and an IRS Litigation Guideline Memorandum. *See Hall*, 132 S. Ct. at 1889–90. Here, by contrast, there is no comparable consensus. Aside from the IRS's litigation position in this case, it appears that the 2009 Chief Counsel Advice—which is just six years old—is the IRS's only pronouncement addressing how § 163(h)(3)'s debt

limits apply to unmarried co-owners.[12]    The agency's
guidance is closer to a "mere[] . . . litigating position" than to
an "agency interpretation of 'longstanding' duration."
Dissent at 43 (quoting *Alaska Dep't of Envtl. Conservation v.
EPA*, 540 U.S. 461, 487–88 (2004)).

Even putting all that aside, we are not persuaded by the
reasoning in the IRS's 2009 guidance. The 2009 Chief
Counsel Advice reasons that "acquisition indebtedness" is
defined in the statute "as indebtedness incurred in acquiring
a qualified residence of the taxpayer—not as indebtedness
incurred in acquiring [a] taxpayer's *portion* of a qualified
residence," and concludes that unmarried co-owners are
"limited to $1,000,000 of total, 'aggregate' acquisition
indebtedness." IRS Chief Counsel Advice No. 200911007,
at 4. But this begs the question. As we have explained,
although the statute limits "[t]he aggregate amount treated"
as acquisition or home equity debt, it does not say to whom
or what the limits apply.

Indeed, we are not convinced the dissent is fully
persuaded by the 2009 Chief Counsel Advice either.
Although the dissent extols the IRS's "reasonable and
persuasive" "position," Dissent at 43, the dissent only briefly
discusses the Chief Counsel's actual reasoning. And as for
the IRS's arguments on appeal, the dissent shies away from
the IRS's principal argument—i.e., that "the focus of the

---

[12] Pointing to 26 C.F.R. § 1.163-10T(e), the dissent says "the IRS has
applied its expert interpretation of § 163(h) consistently for many years."
Dissent at 44. Yet the dissent does not dispute that § 1.163-10T(e) is
completely silent as to unmarried co-owners (or any co-owners, for that
matter). The 2009 Chief Counsel Advice is the one and only IRS
pronouncement on the issue before us.

statute is on the residence, not on the taxpayer." We have explained (in Part III.B) why this argument fails, yet the dissent offers no response.

What is more, in one important respect, the dissent rejects the IRS's interpretation. According to the dissent, the married-person parenthetical is not superfluous because it imposes a "statutory penalty" on married individuals who decide to file separately. *Id.* at 48. Under this view, two unmarried co-owners are entitled to a total debt limit of $1.1 million, a married couple filing jointly is entitled to a total debt limit of $1.1 million, and even a single individual is entitled to a total debt limit of $1.1 million—but a married couple filing separately is entitled to a total debt limit of $550,000. *See id.* at 46–47.

To our knowledge, however, neither the IRS nor the Tax Court has ever adopted the dissent's interpretation. As the IRS explained in its brief on appeal, "The parenthetical language in the acquisition indebtedness limitation in § 163(h)(3)(B)(ii) provides that married taxpayers who file separate returns are limited to acquisition indebtedness of $500,000 *each*." (Emphasis added.) *Accord Sophy*, 138 T.C. at 212 ("[M]arried taxpayers who file separate returns are limited to acquisition indebtedness of $500,000 *each* . . . ." (emphasis added)); *Bronstein*, 138 T.C. at 386 ("[T]he parenthetical indebtedness limitations . . . are $550,000 for *each* spouse filing a separate return." (emphasis added)); IRS Chief Counsel Advice No. 200911007, at 4 (explaining that the per-residence operation of the $1 million limit on acquisition indebtedness "is evident from the [married-person] parenthetical," thus implying that *each* separately filing spouse gets a separate $500,000 aggregate debt limit).

On this issue there *is* a consensus, and the dissent is on the wrong side.

At bottom, although an IRS Chief Counsel Advice statement "is helpful in determining the position of the IRS," it is an internal IRS memorandum prepared by an individual IRS attorney. *Wells Fargo & Co. v. United States*, 119 Fed. Cl. 27, 38 (2014). The document itself cautions that it "may not be used or cited as precedent." IRS Chief Counsel Advice No. 200911007, at 1. Indeed, the IRS could issue a memorandum taking the opposite position tomorrow, "apparently without revoking the earlier guidance." *Wells Fargo*, 119 Fed. Cl. at 38 n.12.

Every factor the dissent says we should consider suggests that the IRS's interpretation should not be given significant weight. Having considered the IRS's reasoning as set out in the 2009 Chief Counsel Advice and the IRS's briefs on appeal, we decline to adopt its interpretation.

VI

We hold that 26 U.S.C. § 163(h)(3)'s debt limit provisions apply on a per-taxpayer basis to unmarried co-owners of a qualified residence. We infer this conclusion from the text of the statute: By expressly providing that married individuals filing separate returns are entitled to deduct interest on up to $550,000 of home debt each, Congress implied that unmarried co-owners filing separate returns are entitled to deduct interest on up to $1.1 million of home debt each. We accordingly reverse the Tax Court's decision and remand for the limited purpose of allowing the parties to determine, in a manner consistent with this opinion, the proper amount of qualified residence interest that

petitioners are entitled to deduct, as well as the proper amount of any remaining deficiency.

### REVERSED and REMANDED.

---

IKUTA, Circuit Judge, dissenting:

Today the majority interprets the Tax Code to allow unmarried taxpayers who buy an expensive residence together to deduct twice the amount of interest paid on the debt secured by their residence than spouses would be allowed to deduct. While the language of the relevant statute is ambiguous, the IRS has offered an interpretation that limits unmarried taxpayers in this situation to deducting the same amount as married taxpayers filing jointly. Because we should defer to this reasonable interpretation by the IRS, I dissent.

I

The Internal Revenue Code provides that interest paid or accrued on indebtedness shall generally be allowed as a federal tax deduction. 26 U.S.C. § 163(a). Deductions for personal interest paid or accrued are generally disallowed. *Id.* § 163(h)(1). Congress made an exception from this disallowance for "qualified residence interest (within the meaning of [§ 163(h)(3)])." *Id.* § 163(h)(2). "Qualified residence interest" is defined in § 163(h)(3) as follows:

> (3) Qualified residence interest–For purposes
> of this subsection–

(A) In general.–The term "qualified residence interest" means any interest which is paid or accrued during the taxable year on–

(i) acquisition indebtedness with respect to any qualified residence of the taxpayer, or

(ii) home equity indebtedness with respect to any qualified residence of the taxpayer.

The statute defines "qualified residence" as "the principal residence" of a taxpayer and one other selected home used as a residence. *Id.* § 163(h)(4)(A)(i). The term "acquisition indebtedness," is defined as debt "incurred in acquiring, constructing, or substantially improving any qualified residence of the taxpayer, and [which] is secured by such residence." *Id.* § 163(h)(3)(B). But not all such debt counts as acquisition indebtedness. Rather, "[t]he aggregate amount treated as acquisition indebtedness for any period shall not exceed $1,000,000 ($500,000 in the case of a married individual filing a separate return)." *Id.* § 163(h)(3)(B)(ii). Similarly, the term "home equity indebtedness" is defined as "indebtedness (other than acquisition indebtedness) secured by a qualified residence. . . ." *Id.* § 163(h)(3)(C)(i). But again, not all the debt secured by the qualified residence counts as home equity indebtedness. Like the case of acquisition indebtedness, "[t]he aggregate amount treated as home equity indebtedness for any period shall not exceed $100,000 ($50,000 in the case of a separate return by a married individual)." *Id.* § 163(h)(3)(C)(ii).

The IRS has adopted a straightforward application of this statute when there is a single taxpayer or a married couple filing jointly. If a qualified residence serves as security for debt that is more than the specified $1.1 million, only the interest payments on the allowed $1.1 million of the debt are deductible. In the case of an individual taxpayer, the IRS calculates the proportion of the taxpayer's total interest payments that is deductible by dividing the $1.1 million of debt by the total amount of debt secured by the qualified residence. *See* 26 C.F.R. § 1.163-10T(e);[1] Chief Couns. Advice, IRS CCA 200911007, 2009 WL 641772.[2] So if the qualified residence is security for $2.2 million in debt, the taxpayer can calculate the proportion of interest payments that is deductible by dividing $1.1 million (the total aggregate debt allowed by the statute) by $2.2 million (the total amount of debt secured by the qualified residence). The result is that

---

[1] 26 C.F.R. § 1.163-10T discusses "qualified residence interest" in 26 U.S.C. § 163(h)(3). § 1.163-10T(e) provides a formula to determine qualified residence interest when secured debt exceeds the adjusted purchase price of a house. The parties do not dispute that it is also the applicable formula for purposes of determining what proportion of interest payments is deductible when "the average balance of the debt" exceeds the "applicable debt limit." 26 C.F.R. § 1.163-10T(e). The majority concedes that § 1.163-10T(e) applies in this context, Maj. Op. at 6, 14 n.5, but argues that it "only addresses the situation of a single taxpayer," Maj. Op. at 28 n.11. Nothing in the regulation supports the majority's assertion, however; rather, the IRS has concluded that the regulation does apply to co-owners. *See* IRS CCA 200911007, 2009 WL 641772.

[2] Although the IRS does not deem Chief Counsel Advice letters to be precedential, courts cite these statements when they are helpful in light of an agency's expertise and established practice. *See, e.g.*, *Hall v. United States*, 132 S. Ct. 1882, 1890 (2012) (holding that there was "no reason to depart from those established understandings" contained in an IRS Chief Counsel Advice statement, its manual, and its litigation guidelines); *see also Wells Fargo & Co. v. United States*, 119 Fed Cl. 27, 37–38 (2014).

the taxpayer can deduct one half of the interest the taxpayer paid on the total debt.

Similarly, spouses filing jointly are subject to the $1,000,000 limit on acquisition indebtedness and the $100,000 limit on home equity indebtedness. *See Pau v. Comm'r*, 73 T.C.M. (CCH) 1819, 1997 WL 28678, at *1, 12 (1997). This approach is consistent with the Tax Code's typical treatment of a married couple filing jointly as one taxpayer, who together have an aggregate debt and together are subject to the statutory limit on how much interest they may deduct. *See, e.g.*, 26 C.F.R. § 1.179-2(b)(5)(i) ("A husband and wife who file a joint income tax return . . . are treated as one taxpayer in determining the amount of the dollar limitation under . . . this section."); 26 C.F.R. § 1.469-1T(j)(1) ("[S]pouses filing a joint return for a taxable year shall be treated for such year as one taxpayer for purposes of section 469.").

The IRS has also explained how this methodology applies when there are unmarried co-owners of a qualified residence. *See* Chief Couns. Advice, IRS CCA 200911007, 2009 WL 641772. Under the IRS's interpretation, regardless of the number of unmarried taxpayers who have an ownership interest in a qualified residence, only interest payments on $1.1 million of the debt encumbering that qualified residence are deductible. Therefore, the IRS applies its formula as follows: each co-owner who has an ownership interest in the qualified residence may deduct a percentage of the interest payments the co-owner paid or accrued, in proportion to the total aggregate debt allowed by the statute ($1.1 million) divided by the total amount of debt secured by the qualified residence. In other words, if a taxpayer has an ownership interest in a qualified residence that is security for $2.2

million of debt, the taxpayer can deduct one half of the interest payments that the taxpayer made on that debt ($1.1 million debt allowed by statute divided by $2.2 million debt secured by the qualified residence). The other co-owners can do the same.

## II

Bruce Voss and Charles Sophy argue that we should reject the IRS's interpretation of 26 U.S.C. § 163(h) and allow them double the deductible interest that an individual taxpayer or married couple filing jointly would get. Voss and Sophy are an unmarried couple who both claim the same qualified residence, which is comprised of two houses. In order to purchase their primary home in Beverly Hills, California, they took out a $2,240,000 loan. They also borrowed another $300,000 home equity line of credit secured by the Beverly Hills home. In order to purchase their second home in Rancho Mirage, California, they took out a $486,300 loan. Voss and Sophy purchased these houses as joint tenants, meaning that each had an undivided one-half interest in the house. They also agreed to be jointly and severally liable on all loans.

Voss and Sophy filed separate tax returns for tax years 2006 and 2007. The average balance on the two mortgages and home equity line of credit was approximately $2.7 million in tax years 2006 and 2007. Nevertheless, both Voss and Sophy claimed deductions for the full amount of interest each had paid on the loans on their qualified residence.[3]

---

[3] The deductions Voss and Sophy claimed on their tax returns were much greater than the amount they now claim under their current interpretation of § 163(h).

The IRS issued notices of deficiency because Voss and Sophy had claimed deductions that exceeded the limits allowed by the Internal Revenue Code. According to the IRS, Voss and Sophy could claim deductions for interest they had paid on the first $1.1 million of the $2.7 million debt, pursuant to 26 U.S.C. § 163(h)(3), and were not entitled to claim deductions for interest paid on the entire $2.7 million of the debt. The tax court agreed.

On appeal, Voss and Sophy argue for a different interpretation of § 163(h) and therefore a different application of the IRS formula. Voss and Sophy claim that the $1.1 million "aggregate amount" of debt that can be treated as acquisition and home equity indebtedness for purposes of § 163(h)(3)(B) does not relate to the total amount of debt encumbering a qualified residence. Instead, if the total amount of debt encumbering a qualified residence exceeds $1.1 million, the co-owners may effectively divide that total amount of debt between themselves and each deduct interest payments on up to $1.1 million of their portion of the total debt. For example, if a $2.2 million debt is secured by a qualified residence owned by two co-owners, Voss and Sophy claim that the co-owners can divide the debt equally between themselves. Under this theory, Co-Owner 1 could deduct interest payments made on $1.1 million of debt (i.e., 100 percent of Co-Owner 1's interest payments), and of course, Co-Owner 2 could do the same thing. As a result, the co-owners could deduct interest payments on $2.2 million of debt secured by their qualified residence, even though a married couple filing jointly or a single taxpayer could deduct interest on only $1.1 million of debt.

Applying their interpretation, Voss argues that, because he and Sophy each have an "equal share of the mortgage," he

and Sophy have divided the $2.7 million debt between themselves on a fifty-fifty basis. Therefore, Voss can deduct interest payments made on $1.1 million of his $1.35 million portion of the debt secured by his qualified residence. Dividing $1.1 million (the total aggregate debt allowed by the statute) by $1.35 million (Voss's self-apportioned amount of debt secured by the qualified residence), this means about 80 percent of his interest payments is deductible. And, the argument goes, Sophy can do the same thing. As a result, Voss and Sophy claim they can deduct 80 percent of the interest paid on $2.7 million, the total indebtedness on their qualified residence, rather than deducting 40 percent of the interest paid on that debt had they been a married couple.

## III

Voss and Sophy's approach to § 163(h) should be rejected because it is contrary to the IRS's reasonable and persuasive interpretation of the statute. Voss and Sophy cannot claim that the plain language of § 163(h) compels their interpretation; rather, the statute gives no indication that multiple co-owners may each "treat" $1.1 million of debt as "acquisition indebtedness" or "home equity indebtedness" for purposes of an interest deduction. In these circumstances, we can afford respect to an agency's interpretation of a statute, whether it is offered in an opinion letter, policy statement, agency manual, or even a well-reasoned legal brief. *See Christensen v. Harris Cnty.*, 529 U.S. 576, 587 (2000) (citing *Skidmore v. Swift & Co.*, 323 U.S. 134, 140 (1944)); *see also Christopher v. SmithKline Beecham Corp.*, 132 S. Ct. 2156, 2165–66, 2169 (2012). An agency interpretation of a statute is entitled to a "measure of deference proportional to the '"thoroughness evident in its consideration, the validity of its reasoning, its consistency with earlier and later

pronouncements, and all those factors which give it power to persuade.'"" *Christopher*, 132 S. Ct. at 2168–69 (quoting *United States v. Mead Corp.*, 533 U.S. 218, 228 (2001) (quoting *Skidmore*, 323 U.S. at 140)). We also consider the specialized and technical expertise of the agency, *see Skidmore*, 323 U.S. at 140 (noting that the "rulings, interpretations and opinions" of an agency "constitute a body of experience and informed judgment to which courts and litigants may properly resort for guidance"), as well as whether the agency's guidance is longstanding or merely a litigating position. *See Alaska Dept. of Envtl. Conservation v. EPA*, 540 U.S. 461, 487–88 (2004) ("We 'normally accord particular deference to an agency interpretation of "longstanding" duration . . . .'" (quoting *Barnhart v. Walton*, 535 U.S. 212, 220 (2002))).

Here, the IRS's position, expressed in its legal brief on appeal and in its 2009 Chief Counsel Advice statement, is both reasonable and persuasive. First, it is consistent with the text of the statute: the language of § 163(h)(3) is reasonably read to establish that the debt limit of $1.1 million per qualified residence applies regardless whether there is one owner or two co-owners. The fact that "acquisition indebtedness" is defined as debt secured by a qualified residence suggests that Congress also contemplated that the "aggregate amount treated as acquisition indebtedness" was also defined with respect to a qualified residence. 26 U.S.C. § 163(h)(3)(B).

And the IRS's interpretation is more persuasive than Voss and Sophy's interpretation, which would result in a windfall to unmarried taxpayers. *See Tablada v. Thomas*, 533 F.3d 800, 807 (9th Cir. 2008) (holding that the Bureau of Prisons's method for calculating good time credits was a reasonable

interpretation of the statute, in part because the plaintiff's contrary method would result in a "windfall" to prisoners that Congress did not intend). There is no basis to infer that Congress intended to allow *unmarried* co-owners of a qualified residence filing separately to deduct interest on up to $2.2 million of debt, while limiting *married* co-owners of a qualified residence to deduct interest on only half that (only up to $1.1 million of debt). A more logical inference is that the deduction was aimed at promoting home ownership for ordinary folks, not to help wealthy individuals purchase mansions that are encumbered with more than $1.1 million of debt.

Third, the IRS has applied its expert interpretation of § 163(h) consistently for many years. *See id.* at 807–08 (noting that the Bureau of Prisons had calculated good time credits by a consistent methodology for at least sixteen years). The IRS first set forth a methodology for determining what proportion of a taxpayer's interest payments is deductible in 1987, when it promulgated regulation § 1.163-10T(e). It explained how this method applied to co-owners of a qualified residence in its Chief Counsel Advice statement in 2009. IRS CCA 200911007, 2009 WL 641772. There is no dispute that the IRS's approach for calculating the deductibility of interest payments under § 163(h)(3)(B) is not merely "an agency's convenient litigating position." *Bowen v. Georgetown Univ. Hosp.*, 488 U.S. 204, 213 (1988). Under these circumstances, it is appropriate to defer to the IRS's specialized expertise and understanding of what best effectuates the purpose of the statute.[4]

---

[4] The majority claims that it is inconsistent to defer to the IRS's position regarding the deduction for unmarried co-owners while failing to defer to the IRS regarding the deduction for married individuals filing separately.

In response to the IRS's reasonable interpretation of § 163(h)(3)(B), Voss and Sophy look for help in a separate section of the Tax Code governing apportioning gain based on the sale of a residence, 26 U.S.C. § 121, and its accompanying regulation, 26 C.F.R. § 1.121-2. Section 121 allows a taxpayer who sells a residence to exclude up to $250,000 of gain from gross income. 26 U.S.C. § 121(b)(1). The regulations clarify that "[i]f taxpayers jointly own a principal residence but file separate returns, each taxpayer may exclude from gross income up to $250,000 of gain that is attributable to each taxpayer's interest in the property. . . ." 26 C.F.R. § 1.121-2(a)(2). Voss and Sophy argue that because § 163(h) cross-references 26 U.S.C. § 121 for the definition of a "qualified residence," the methodology set forth in § 1.121-2(a)(2) should also apply to § 163(h). Accordingly, they argue, because they jointly own a qualified residence, and file separate returns, they should likewise be able to deduct the amount of interest each paid on $1.1 million of debt out of each co-owner's "equal share of the mortgage." But section 121 provides Voss and Sophy no support because it has nothing to do with § 163(h)(3). Other than the use of § 121 for the definition of "qualified residence," there is no indication that either Congress or the IRS contemplated that the methodology in § 1.121-2(a) should be used to determine the method of determining which interest is deductible under 26 U.S.C. § 163(h)(3). Voss and Sophy's argument merely shows the IRS knew how to

---

Maj. Op. at 34–35. But, as discussed below, the IRS has not expressed a position as to what deduction married individuals filing separately may claim. *See infra* note 5. As such, there is no interpretation to which we could defer regarding what the statute means for married individuals filing separately. By contrast, the IRS has offered a clear interpretation of the statute as it applies to unmarried co-owners. We should defer to that interpretation.

authorize such a methodology when it chose to do so, which it did not when interpreting § 163(h).

In the absence of an IRS regulation interpreting § 163(h) as allowing co-owners to claim deductions attributable to more than $1.1 million of debt for a co-owned qualified residence, we should defer to the IRS's interpretation of the statute as limiting co-owners to deducting interest on $1.1 million of debt out of the total acquisition and home equity debt secured by the qualified residence. *See Christensen*, 529 U.S. at 587.

IV

The majority agrees that the statute is silent as to how to apply the debt limit of $1.1 million when there are co-owners of a qualified residence. Maj. Op. at 7, 14. The majority therefore exerts "considerable effort," *id.* at 14, to find textual support for using the approach demanded by Voss and Sophy. The majority bases its ruling on the thinnest of reeds: the parenthetical in § 163(h)(3) that specifies that a married individual filing separately can deduct interest payments on half the amount of debt compared to a single individual or a married couple filing jointly. According to the majority, in order to avoid absurdity, we should read the marriage parenthetical as allowing married individuals filing separately each to deduct interest on $550,000 of debt. Maj. Op. at 16–17. If married individuals filing separately were not *each* able to deduct interest on $550,000 of debt through some unspecified calculation methodology, the majority asserts, spouses filing separately would receive half the deduction of spouses filing jointly. This is absurd, the majority claims, because a different debt limit for a jointly filing couple and a separately filing couple is "surely not what the statute

intended." Maj. Op. at 17. The majority then leaps from this inferred congressional intent to a different conclusion: Congress must also have intended to allow all unmarried individuals who co-own a qualified residence secured by debt to deduct interest on the full debt limit, $1.1 million.

This argument too fails. First, effectuating the majority's approach to the marriage parenthetical would presumably entail allowing a married taxpayer filing separately to deduct his or her own interest payments on the debt in the proportion of $550,000 divided by one half of the total debt secured by the qualified residence. *See* Maj. Op. at 28 n.11 (agreeing that the IRS's formula set out in § 1.163-10T(e) "may need to be adjusted to account for the situation of separately filing co-owners, whether married or unmarried"). If each married taxpayer took this approach, married taxpayers filing separately would deduct the same amount of interest as married taxpayers filing jointly. But this approach fails for the same reason Voss and Sophy's apportionment theory fails: it flies free of the statutory language that limits the amount "treated" as acquisition or home equity indebtedness to a capped amount out of the *total* acquisition or home equity indebtedness secured by the residence (rather than one co-owner's half of that total debt).[5] We should instead defer

_____

[5] The majority asserts that there is a clear consensus among tax courts and the IRS that a married couple filing separately may, in the aggregate, deduct interest on up to $1.1 million of qualifying debt. *See* Maj. Op. at 17–18 n.8, 34–35. This is incorrect. While the sources cited by the majority correctly indicate that the debt limit in the statute is $550,000 for "each" married individual filing a separate return, none of these sources explains how the IRS would apply its formula to calculate the interest deduction for a married individual filing separately. Because the meaning of the marriage parenthetical is unclear, it does not undercut the IRS's

to the IRS's reasonable interpretation that the statute defines "acquisition indebtedness" as "indebtedness incurred in acquiring a qualified residence of the taxpayer - not as indebtedness incurred in acquiring taxpayer's *portion* of a qualified residence."     IRS CCA 200911007, 2009 WL 641772.

More importantly, the majority's *argumentum ad absurdum* fails because imposing a penalty on married individuals for filing separately would not be not absurd.  We know that Congress could reasonably decide to discourage a married couple from filing separate returns to minimize taxes, because it has imposed such penalties in other portions of the Tax Code.  For example, the Tax Code prohibits married individuals filing separately from claiming certain tax credits or deducting interest on other types of loans.  *See, e.g.*, 26 U.S.C. § 32(d) (married individual filing separately is not eligible for an earned income credit); *id.* § 221(e) (married individual filing separately is not eligible for deducting interest on student loans).  Indeed, a tax court has already held that the plain language of § 163(h) may result in a penalty on a married couple filing separately compared to a married couple filing jointly.  *See Bronstein v. Comm'r*, 138 T.C. 382, 383–84 (2012) (rejecting a taxpayer's argument that Congress intended for married couples filing separately to receive the same treatment under § 163(h)(3) as married couples filing jointly).

Rather, the absurdity argument works against the majority.  The majority's approach would result in spouses filing jointly (or separately) getting half the total deduction of

---

unambiguous position that unmarried co-owners may not receive double the deduction of married co-owners.

unmarried individuals.[6] The majority writes this off as a marriage penalty, supported by hypothetical policy reasons why Congress may have intended such a result. Maj. Op. at 28–30. But the majority's view that Congress intended to penalize married co-owners by giving them *half* the deduction allowed to unmarried co-owners seems more absurd than the view that Congress may have intended to penalize married couples filing separately. After all, it is more reasonable to think that Congress wanted to encourage married couples to file jointly to avoid a statutory penalty than it is to think that Congress wanted to encourage taxpayers not to marry (or to get divorced) in order to avoid forfeiting half the deduction they could otherwise take. Given that reasonable jurists could point to either interpretation as absurd, the better solution is to defer to the IRS's reasonable interpretation of the statute.

Finally, the majority discusses the practical difficulties that may arise if we did not allow unmarried co-owners each to deduct interest on up to $1.1 million of debt, such as the problem of determining how much interest each of multiple hypothetical co-owners may deduct. Maj. Op. at 26–27. Following the IRS's reasonable interpretation of how the statute works, each co-owner is entitled to deduct the interest payments that the co-owner actually paid, multiplied by a fraction consisting of $1.1 million divided by the total

---

[6] In other words, under the majority's theory, spouses filing jointly who own a qualified residence encumbered with a $2.2 million loan could deduct one half of their total interest payments (based on dividing the $1.1 million debt limit by the $2.2 million debt). But if two unmarried taxpayers owned a qualified residence with the same $2.2 million loan, the taxpayers could deduct 100 percent of their interest payments because each taxpayer could treat $1.1 million as acquisition or home equity debt (i.e., based on the $1.1 million debt limit divided by each taxpayer's "portion" of the debt, $1.1 million). Maj. Op. at 16–17.

aggregate debt secured by the co-owner's qualified residence. So long as an individual co-owner knows the amount of interest the co-owner personally paid, and how much debt is secured by the qualified residence co-owned by that taxpayer, the co-owner can calculate the amount of deductible interest. If there are policy consequences of the plain language that Congress did not intend, Congress can amend the statute itself.

The majority concedes that the statute is "anything but 'plain'." Maj. Op. at 32. The IRS has provided a workable approach to Congress's ambiguous statute that avoids many of the problems created by the majority's opinion. Neither the majority nor Voss and Sophy offer arguments that would compel departing from this approach. I would affirm the tax court.