CHARLES J. SOPHY, PETITIONER *v.* COMMISSIONER OF
INTERNAL REVENUE, RESPONDENT

BRUCE H. VOSS, PETITIONER *v.* COMMISSIONER OF
INTERNAL REVENUE, RESPONDENT

Docket Nos. 16421–09, 16443–09.  Filed March 5, 2012.

R determined that Ps, co-owners of two residences, were together limited in deducting interest on $1 million of acquisition indebtedness and $100,000 of home equity indebtedness, under I.R.C. sec. 163(h)(3)(B)(ii) and (C)(ii). Ps contend that where co-owners are not married to each other, the limitations apply separately to each taxpayer who is a co-owner of up to two residences. *Held*: The limitations of I.R.C. sec. 163(h) apply to the aggregate indebtedness on up to two residences, and co-owners not married to each other may not deduct more than a proportionate share of interest on $1.1 million.

*Jeffrey L. Reuben* and *William Marc Weintraub*, for petitioners.

*Kimberly A. Santos* and *Kathryn Alice Meyer*, for respondent.

OPINION

COHEN, *Judge*: In these consolidated cases respondent determined deficiencies of $19,613 and $6,799 in petitioner

204

Charles J. Sophy's Federal income taxes for 2006 and 2007, respectively, and deficiencies of $16,918 and $15,872 in petitioner Bruce H. Voss' Federal income taxes for 2006 and 2007, respectively. The deficiencies resulted from the disallowance of portions of petitioners' claimed deductions for real estate taxes and qualified residence interest. All section references are to the Internal Revenue Code in effect for the years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure. After concessions with respect to the deductions for real estate taxes, the issue for decision is whether respondent properly applied the limitations under section 163(h)(3)(B)(ii) and (C)(ii) to reduce petitioners' claimed qualified residence interest deductions.

## *Background*

These cases were submitted fully stipulated under Rule 122. The stipulated facts are incorporated in our findings by this reference. At the time their petitions were filed, petitioners resided in California.

In 2000 petitioner Charles J. Sophy and petitioner Bruce H. Voss purchased a house together in Rancho Mirage, California, and financed the purchase by obtaining a mortgage that was secured by the Rancho Mirage house. Petitioners acquired the Rancho Mirage house as joint tenants and held the property as joint tenants during the years in issue.

In 2002 petitioners refinanced the Rancho Mirage house with a new mortgage loan of $500,000. The proceeds of the new mortgage loan, which was secured by the Rancho Mirage house, were used to pay off the original mortgage loan. Petitioners were jointly and severally liable for the new mortgage on the Rancho Mirage house.

In 2002 petitioners purchased a house in Beverly Hills, California. Petitioners acquired the Beverly Hills house as joint tenants and held the property as joint tenants during the years in issue. To finance the purchase, petitioners obtained a mortgage secured by the Beverly Hills house. In 2003 petitioners refinanced the Beverly Hills house by obtaining a new mortgage loan of $2 million. The proceeds of this new mortgage loan, which was secured by the Beverly Hills house, were used to pay off the original mortgage loan.

Petitioners were jointly and severally liable for the mortgage on the Beverly Hills house.

Also in 2003 petitioners obtained a home equity line of credit of $300,000 for the Beverly Hills house, on which petitioners were jointly and severally liable. For the years in issue, petitioners used the Beverly Hills house as their principal residence and the Rancho Mirage house as their second residence.

In 2006 Sophy paid mortgage interest of $94,698 for the two residences, and Voss paid $85,962. The total average balance in 2006 for the Beverly Hills house mortgage and home equity loan and the Rancho Mirage house mortgage was $2,703,568. In 2007 Sophy paid mortgage interest of $99,901, and Voss paid $76,635. The total average balance in 2007 for the two mortgages and the home equity loan was $2,669,136.

On their individual Federal income tax returns for 2006 and 2007, petitioners each claimed deductions for qualified residence interest. The Internal Revenue Service (IRS) audited petitioners' 2006 and 2007 individual income tax returns and disallowed portions of petitioners' deductions for qualified residence interest. In relevant part, the notice of deficiency for 2006 and 2007 sent to Sophy stated:

It is determined that you are allowed as a deduction for Schedule A— Home Mortgage Interest Expense of $38,530.00 for tax year 2006 and $41,171.00 for tax year 2007 rather than $95,396.00 and $65,614 for taxable years 2006 and 2007 respectively. The amounts of $56,866.00 and $24,443.00 for tax years 2006 and 2007 respectively are not allowed because your deduction for home mortgage interest exceeds the limits per the provisions of the Internal Revenue Code. The excess amount is not deductible.

In relevant part, the notice of deficiency for 2006 and 2007 sent to Voss stated:

It is determined that you are allowed as a deduction for Schedule A— Home Mortgage Interest Expense of $34,975.00 for tax year 2006 and $31,583.00 for tax year 2007 rather than $95,396.00 and $88,268.00 for taxable years 2006 and 2007 respectively. The amounts of $60,421.00 and $56,685.00 for tax years 2006 and 2007 respectively are not allowed because your deduction for home mortgage interest exceeds the limits per the provisions of the Internal Revenue Code. The excess amount is not deductible.

These determinations followed the reasoning of advice issued in 2009 in which the IRS dealt with the question of

how to apply the acquisition indebtedness limitation in a situation where the total acquisition indebtedness was more than $1 million and the taxpayer was one of two unmarried co-owners of the residence. *See* C.C.A. 200911007 (Mar. 13, 2009). This Chief Counsel Advice states:

[T]he $1,000,000 limitation on acquisition indebtedness under § 163(h)(3)(B)(ii) is used to determine the portion [of] Taxpayer's interest payments that may be deducted. In particular, the amount of interest Taxpayer may deduct is determined by multiplying the amount of interest actually paid by Taxpayer on Taxpayer's qualified residence by a fraction the numerator of which is $1,000,000 and the denominator of which is * * * the average balance of the outstanding acquisition indebtedness during the years in question.

In these cases, the IRS computed the applicable limitation ratio as $1.1 million ($1 million for acquisition indebtedness plus $100,000 for home equity indebtedness) over the entire average balance of the qualifying loans. This limitation ratio was then multiplied by the amount of interest paid by each petitioner to arrive at the amount of deductible qualified residence interest that each petitioner could claim for each year in issue.

The IRS determined the deductible qualified residence interest for Sophy for each year in issue as follows:

|  | *2006* | *2007* |
|---|---|---|
| Total qualified loan limit | $1,100,000 | $1,100,000 |
| Total average balance of all mortgages on all qualified loans | $2,703,568 | $2,669,136 |
| Limitation ratio | 0.4068697 | 0.41211838 |
| Total amount of interest paid by Sophy | $94,698 | $99,901 |
| Deductible mortgage interest | $38,530 | $41,171 |

The IRS determined the deductible mortgage interest for Voss for the years in issue as follows:

|  | *2006* | *2007* |
|---|---|---|
| Total qualified loan limit | $1,100,000 | $1,100,000 |
| Total average balance of all mortgages on all qualified loans | $2,703,568 | $2,669,136 |
| Limitation ratio | 0.4068697 | 0.41211838 |
| Total amount of interest paid by Voss | $85,962 | $76,635 |
| Deductible mortgage interest | $34,975 | $31,583 |

### *Discussion*

Section 163(a) allows a deduction for all interest paid or accrued within the taxable year on indebtedness. As an exception, section 163(h) generally disallows a deduction for personal interest. Personal interest, however, does not include qualified residence interest. Sec. 163(h)(2)(D).

In general, a qualified residence is defined as a taxpayer's principal residence and one other home that is used as a residence by the taxpayer. Sec. 163(h)(4)(A)(i). Qualified residence interest means any interest paid or accrued during a tax year on acquisition indebtedness or home equity indebtedness with respect to the taxpayer's qualified residence. Sec. 163(h)(3)(A).

Section 163(h)(3)(B) provides:

(i) IN GENERAL.—The term "acquisition indebtedness" means any indebtedness which—

  (I) is incurred in acquiring, constructing, or substantially improving any qualified residence of the taxpayer, and

  (II) is secured by such residence.

Such term also includes any indebtedness secured by such residence resulting from the refinancing of indebtedness meeting the requirements of the preceding sentence (or this sentence); but only to the extent the amount of the indebtedness resulting from such refinancing does not exceed the amount of the refinanced indebtedness.

(ii) $1,000,000 LIMITATION.—The aggregate amount treated as acquisition indebtedness for any period shall not exceed $1,000,000 ($500,000 in the case of a married individual filing a separate return).

Section 163(h)(3)(C) provides:

(i) IN GENERAL.—The term "home equity indebtedness" means any indebtedness (other than acquisition indebtedness) secured by a qualified residence to the extent the aggregate amount of such indebtedness does not exceed—

  (I) the fair market value of such qualified residence, reduced by

  (II) the amount of acquisition indebtedness with respect to such residence.

(ii) LIMITATION.—The aggregate amount treated as home equity indebtedness for any period shall not exceed $100,000 ($50,000 in the case of a separate return by a married individual).

There is no dispute that petitioners' homes meet the definition of a qualified residence and that the mortgage interest paid by petitioners is qualified residence interest because it

was paid on acquisition and home equity indebtedness secured by their homes.

Petitioners' sole contention is that the section 163(h)(3) limitations on indebtedness (indebtedness limitations) are properly applied on a per-taxpayer basis with respect to residence co-owners who are not married to each other. Petitioners argue that they should each be allowed a deduction for interest paid on up to $1.1 million of acquisition and home equity indebtedness with respect to the residences that they jointly own. Under their interpretation, because these cases involve two unmarried co-owners, together they should be able to deduct interest paid on up to $2.2 million of acquisition and home equity indebtedness.

Respondent's position, on the other hand, is that the indebtedness limitations are properly applied on a per-residence basis, regardless of the number of residence owners and whether co-owners are married to each other. Under respondent's interpretation, co-owners should collectively be limited to a deduction for interest paid on a maximum of $1.1 million of acquisition and home equity indebtedness.

We must decide whether the statutory limitations on the amount of acquisition and home equity indebtedness with respect to which interest is deductible under section 163(h)(3) are properly applied on a per-residence or per-taxpayer basis where residence co-owners are not married to each other.

When we interpret a statute, our purpose is to give effect to Congress' intent. To accomplish this we begin with the statutory language, which is the most persuasive evidence of the statutory purpose. *See United States v. Am. Trucking Ass'ns, Inc.*, 310 U.S. 534, 542–543 (1940). The words of the statute should be construed in their "ordinary, everyday", and plain meaning. *Crane v. Commissioner*, 331 U.S. 1, 6 (1947). Usually the meaning of the statutory language is conclusive. *See United States v. Ron Pair Enters., Inc.*, 489 U.S. 235, 242 (1989); *Woodral v. Commissioner*, 112 T.C. 19, 23 (1999). If a statute is silent or ambiguous, we may look to the statute's legislative history in an attempt to determine congressional intent. *See Burlington N. R.R. v. Okla. Tax Comm'n*, 481 U.S. 454, 461 (1987); *United States v. Harrell*, 637 F.3d 1008, 1012 (9th Cir. 2011). When a statute appears clear on its face, however, there must be unequivocal evidence of legislative purpose before interpreting the statute in

a way that overrides the plain meaning of the words used therein. *See Burlington*, 481 U.S. at 461; *Harrell*, 637 F.3d at 1012; *Pallottini v. Commissioner*, 90 T.C. 498, 503 (1988); *Huntsberry v. Commissioner*, 83 T.C. 742, 747–748 (1984).

We begin our analysis by looking closely at the definitions of acquisition indebtedness and home equity indebtedness in section 163(h)(3)(B)(i) and (C)(i). The acquisition indebtedness definition uses the phrase "any indebtedness which is incurred" in conjunction with "acquiring, constructing, or substantially improving any qualified residence of the taxpayer and is secured by such residence." We note that the word "taxpayer" in this context is used only in relation to the qualified residence, not the indebtedness. Similarly, the operative language in the definition of home equity indebtedness is "any indebtedness" that is secured by a qualified residence (other than acquisition indebtedness). Sec. 163(h)(3)(C)(i). Once again, the phrase "any indebtedness" is not qualified by language relating to an individual taxpayer.

Qualified residence interest is defined as "any interest which is paid or accrued during the taxable year on acquisition indebtedness *with respect to any qualified residence* of the taxpayer, or home equity indebtedness *with respect to any qualified residence* of the taxpayer." Sec. 163(h)(3)(A) (emphasis added). The definition of "home equity indebtedness" also includes the phrase "reduced by the amount of acquisition indebtedness *with respect to such residence*" (referring to a qualified residence). Sec. 163(h)(3)(C)(i)(II) (emphasis added). The definitions of the terms "acquisition indebtedness" and "home equity indebtedness" in section 163(h)(3)(B)(i) and (C)(i) establish that the indebtedness must be related to a qualified residence, and the repeated use of the phrases "with respect to a qualified residence" and "with respect to such residence" in the provisions discussed above focuses on the residence rather than the taxpayer.

From Congress' use of "any indebtedness" in the definition of acquisition indebtedness, which is not qualified by language regarding an individual taxpayer, it appears that this phrase refers to the total amount of indebtedness with respect to a qualified residence and which is secured by that residence. The focus is on the entire amount of indebtedness with respect to the residence itself. Thus when the statute limits the amount that may be treated as acquisition indebt-

edness, it appears that what is being limited is the total amount of acquisition debt that may be claimed in relation to the qualified residence, rather than the amount of acquisition debt that may be claimed in relation to an individual taxpayer.

Our analysis of the term "home equity indebtedness" is similar. The use of the phrase "any indebtedness", unqualified by language relating to an individual taxpayer, appears to limit the total amount of home equity indebtedness that may be claimed in relation to the qualified residence itself, rather than the amount of home equity indebtedness that may be claimed in relation to an individual taxpayer.

Because of references to an individual taxpayer in other provisions of section 163(h), petitioners would have us interpret the indebtedness limitations as applying on a per-taxpayer basis, rather than a per-residence basis. Such an interpretation, however, reads too much into the indebtedness limitations. While Congress references "a taxpayer" and "the taxpayer" several times in section 163(h), any reference to an individual taxpayer is conspicuously absent in the language of the indebtedness limitations. Moreover, as noted above, the "taxpayer" references in the definitions of acquisition indebtedness and home equity indebtedness are in relation to the qualified residence, rather than to the indebtedness. "[W]hen 'Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress act[ed] intentionally and purposely' in so doing." *Consol. Freightways Corp. of Del. v. Aetna, Inc.* (*In re Consol. Freightways Corp. of Del.*), 564 F.3d 1161, 1165 (9th Cir. 2009) (citing *Barnhart v. Sigmon Coal Co.*, 534 U.S. 438, 452 (2002)).

With respect to Congress' repeated use of phrases such as "with respect to any qualified residence" and "with respect to such residence" in conjunction with terms that by their own definitions must already be in relation to a qualified residence, these phrases appear to be superfluous. However, "'a statute ought, upon the whole, to be so construed that, if it can be prevented, no clause, sentence, or word shall be superfluous, void, or insignificant.'" *TRW, Inc. v. Andrews*, 534 U.S. 19, 31 (2001) (quoting *Duncan v. Walker*, 533 U.S. 167, 174 (2001)). In addition, we must construe a provision not in isolation, but as part of the statutory scheme in which

it is embedded. *Consol. Freightways*, 564 F.3d at 1165. In the light of the language in section 163(h)(3) taken as a whole, it appears that Congress used these repeated references to emphasize the point that qualified residence interest and the related indebtedness limitations are residence focused rather than taxpayer focused.

Further support regarding application of the indebtedness limitations is found in the parenthetical language addressing married taxpayers filing separate returns. The parenthetical language in the acquisition indebtedness limitation in section 163(h)(3)(B)(ii) provides that married taxpayers who file separate returns are limited to acquisition indebtedness of $500,000 each, or one-half of the otherwise allowable amount of acquisition indebtedness. Similarly, the home equity indebtedness limitation in section 163(h)(3)(C)(ii) includes parenthetical language that provides that married taxpayers who file separate returns are limited to home equity indebtedness of $50,000 each, which is one-half of the otherwise allowable amount of home equity indebtedness. Thus the language used in these provisions suggests, without expressly stating, that co-owners who are married to each other and file a joint return are limited to a deduction of interest on $1 million of acquisition indebtedness and $100,000 on home equity indebtedness. Accordingly, in a case involving acquisition indebtedness of more than $1 million, this Court has limited a married couple's qualified residence interest deduction on a joint return to the interest paid on $1 million of acquisition indebtedness. *See Pau v. Commissioner*, T.C. Memo. 1997–43. (See also Rev. Rul. 2010–25, 2010–44 I.R.B. 571, with respect to the amount of acquisition indebtedness that can be treated as home equity indebtedness for purposes of the section 163(h) limitations. This ruling does not vary from the holding in *Pau* as to the application of the limitations to co-owners who are married to each other.)

Petitioners argue that Congress, in using this particular language in the indebtedness limitations, intended to create a special rule for married couples—a "marriage penalty"— that does not apply to co-owners who are not married to each other. However, in the light of the residence-focused language used throughout section 163(h)(3) and the absence of any reference to an individual taxpayer in the indebtedness limitations themselves, this argument is not persuasive.

Rather than setting out a marriage penalty, this language simply appears to set out a specific allocation of the limitation amounts that must be used by married couples filing separate tax returns, thus implying that co-owners who are not married to one another may choose to allocate the limitation amounts among themselves in some other manner, such as according to percentage of ownership.

Although we have reached our conclusion by reviewing the language of the statute, nothing in the legislative history of the section 163(h)(3) indebtedness limitations suggests that Congress had any other intention than what we have determined from an examination of the language. We conclude that the limitations in section 163(h)(3)(B)(ii) and (C)(ii) on the amounts that may be treated as acquisition and home equity indebtedness with respect to a qualified residence are properly applied on a per-residence basis.

We have considered the arguments of the parties not specifically addressed in this Opinion. They are either without merit or irrelevant to our decision. To reflect concessions and our foregoing conclusion,

*Decisions will be entered under Rule 155.*