Opinion by Judge BYBEE; Dissent by Judge IKUTA.
OPINION
BYBEE, Circuit Judge:
This is a tax dispute brought by two unmarried co-owners of real property, Bruce Yoss and Charles Sophy. For the 2006 and 2007 tax years, Voss and Sophy each claimed a home mortgage interest deduction under § 163(h)(3) of the Internal Revenue Code, which allows taxpayers to deduct interest on up to $1 million of home acquisition debt and $100,000 of home equity debt. After an audit, the IRS determined that Yoss and Sophy were jointly subject to § 163(h)(3)’s $1 million and $100,000 debt limits and thus disallowed a substantial portion of their claimed deductions. Voss and Sophy challenged the IRS’s assessment in Tax Court, arguing that the statute’s debt limits apply per taxpayer such that they were entitled to deduct interest on up to $1.1 million Of home debt each. The Tax Court agreed with the IRS.
We are now called upon to decide how § 163(h)(3)’s debt limit provisions apply when two or more unmarried co-owners of a residence claim the home mortgage interest deduction. Although the statute is silent as to unmarried co-owners, we infer from the statute’s treatment of married individuals filing separate returns that § 163(h)(3)’s debt limits apply to unmarried co-owners on a per-taxpayer basis. We accordingly reverse the decision of the Tax Court and remand for a recalculation of petitioners’ tax liability.
I
Section 163 of the Internal Revenue Code governs the deductibility of interest on a taxpayer’s indebtedness. This section of the Tax Code, like much of the Code, is complex — it requires attention to definitions within definitions and exceptions upon exceptions. To assist the reader, we begin with a brief overview of the section’s relevant provisions.
Section 163 begins with the general rule that interest on indebtedness is deductible. See 26 U.S.C. § 163(a). Subsection (h), however, provides that, “[i]n the case of a taxpayer other than a corporation,” personal interest is not deductible. See id. § 163(h)(1) (“In the case of a taxpayer other than a corporation, no deduction shall be allowed under this chapter for personal interest paid or accrued during the taxable year.”). Nevertheless, “personal interest” is defined rather technically as “any interest allowable as a deduction ... other than” certain specified categories of interest. See id. § 163(h)(2). One of those carved-out categories is “any qualified residence interest (within the meaning of paragraph (3)).” Id. § 163(h)(2)(D).
Section 163(h)(3) thus provides that interest on a “qualified residence” is not “personal interest” and, accordingly, may be deducted by taxpayers who are not corporations. The Code defines “qualified residence” as the taxpayer’s principal residence and “1 other residence of the taxpayer which is selected by the taxpayer for purposes of this subsection for the taxable *1054 year and which is used by the taxpayer as a residence.” Id § 163(h)(4)(A)(i).
“Qualified residence interest” encompasses interest payments on two types of debt: acquisition indebtedness and home equity indebtedness. Id. § 163(h)(3)(A). “Acquisition indebtedness” generally means debt incurred in, or that results from the refinancing of debt incurred in, “acquiring, constructing, or substantially improving” a qualified residence. Id. § 163(h)(3)(B)®. “Home equity indebtedness” generally means indebtedness, other than acquisition indebtedness, that is secured by a qualified residence and that does not exceed the difference between the amount of acquisition indebtedness and the home’s fair market value. Id. § 163(h)(3)(C)®. A home equity line of credit is a typical example of home equity indebtedness. So, for example, if a taxpayer has a purchase money mortgage (or the refinancing of such a mortgage) on both a primary home and a summer home, she can deduct interest payments on both mortgages. She may also deduct the interest on any home equity line of credit on both residences.
Significantly, the statute does not allow taxpayers to deduct interest payments on an unlimited amount of acquisition and home equity indebtedness. Instead, the statute limits “[t]he aggregate amount treated as acquisition indebtedness for any ■ period” to $1,000,000 and “[t]he aggregate amount treated as home equity indebtedness for any period” to $100,000. Id. § 163(h)(3)(B)(ii), (C)(ii). “[I]n the case of a married individual filing a separate return,” however, the statute reduces the debt limits to $500,000 and $50,000. Id. We shall refer to these provisions as the debt limit provisions.
If a taxpayer’s total mortgage debt exceeds the debt limits, a Treasury regulation, 26 C.F.R. § 1.163-10T, provides the method for calculating qualified residence interest. Subsection (e) of that regulation sets out the usual method: qualified residence interest is calculated by multiplying the total interest paid by the ratio of the applicable debt limit over the total debt. See id. § 1.163-10T(e). For example, if a single individual has a $2 million mortgage and a $200,000 home equity line of credit, the ratio is 50%: $1.1 million (the total applicable debt limit under the statute) over $2.2 million (the total debt). Thus, the taxpayer is entitled to deduct 50% of whatever interest is paid or accrued during her taxable year.[1]
In sum, under § 163 and the applicable Treasury regulation, a taxpayer may deduct the interest paid on a mortgage or home equity line of credit for a principal residence and a second home. For taxpayers other than married individuals filing a separate return, the deduction is limited to interest paid on $1 million of mortgage debt and $100,000 of home equity debt. If the taxpayer’s home indebtedness exceeds $1.1 million, then she is entitled to deduct a portion of her interest, determined by the ratio of the statutory debt limit divided by her total actual debt. If the taxpayer is married filing a separate return, the debt limit is $550,000.
Although the statute is specific with respect to a married taxpayer filing a separate return, the Code does not specify whether, in the case of residence co-owners who are not married, the debt limits apply per residence or per taxpayer. That is, is the $1.1 million debt limit the limit on the qualified residence, irrespective of the number of owners, or is it the limit on the *1055 debt that can be claimed by any individual taxpayer? That gap in the Code is the source of the present controversy.
II
A
Bruce Yoss and Charles Sophy are domestic partners registered with the State of California. They co-own two homes as joint tenants — one in Rancho Mirage, California and the other, their primary residence, in Beverly Hills, California.
When Voss and Sophy purchased the Rancho Mirage home in 2000, they took out a $486,800 mortgage, secured by the property. Two years later, they refinanced that mortgage and obtained a new mortgage, also secured by the property, in the amount of $500,000. Voss and Sophy are jointly and severally liable for the refinanced Rancho Mirage mortgage.
Voss and Sophy purchased the Beverly Hills home in 2002. They financed the purchase of the Beverly Hills home with a $2,240,000 mortgage, secured by the Beverly Hills property. About a year later, they refinanced the mortgage by obtaining a new loan in the amount of $2,000,000. Voss and Sophy are jointly and severally liable for the refinanced Beverly Hills mortgage, which, like the original mortgage, is secured by the Beverly Hills property. At the same time as they refinanced the Beverly Hills mortgage, Voss and So-phy also obtained a home equity line of credit of $300,000 for the Beverly Hills home. Voss and Sophy are jointly and severally liable for the home equity line of credit as well.
The total average balance of the two mortgages and the line of credit in 2006 and 2007 (the two taxable years at issue) was about $2.7 million — $2,703,568.05 in 2006 and $2,669,135.57 in 2007. Thus, whether § 163(h)(3)’s debt limit provisions are interpreted as applying per taxpayer (such that Voss and Sophy can deduct interest on up to $2.2 million of debt) or per residence (such that Voss and Sophy can deduct interest on up to $1.1 million of debt), it is in either event clear that Voss and Sophy’s debt exceeds the statutory debt limits.
B
Voss and Sophy each filed separate federal income tax returns for taxable years 2006 and 2007. In their respective returns, Voss and Sophy each claimed home mortgage interest deductions for interest paid on the two mortgages and the home equity line of credit. The parties agree on the amounts of interest Voss and Sophy each paid for those years: Voss paid $85,962.30 in 2006 and $76,635.08 in 2007, and Sophy paid $94,698.33 in 2006 and $99,901.35 in 2007. The total interest paid was $180,660.63 in 2006 and $176,536.43 in 2007.
On their respective 2006 returns, Voss and Sophy each claimed a home mortgage interest deduction of $95,396, for a total of $190,792. Voss and Sophy now agree that this was at least $10,131.37 too much because Voss and Sophy together only paid $180,660.63 in interest that year. The additional amount represents interest that Voss paid on December 31, 2005, and was thus not deductible by either Voss or So-phy for taxable year 2006. For taxable year 2007, Voss and Sophy claimed less mortgage interest than they actually paid — Voss claimed a deduction of $88,268, and Sophy claimed a deduction of $65,614.
The IRS audited the 2006 and 2007 returns and, in 2009, assessed notices of deficiency to Voss and Sophy. The IRS calculated each petitioner’s mortgage interest deduction by applying a limitation ratio to the total amount of mortgage interest that each petitioner paid in each taxable year. The limitation ratio was the same for both Voss and Sophy: $1.1 mil *1056 lion ($1 million of home acquisition debt plus $100,000 of home equity debt) over the entire average balance, for each taxable year, on the Beverly Hills mortgage, the Beverly Hills home equity line of credit, and the Rancho Mirage mortgage.
Using that method, the IRS concluded that Voss was allowed to deduct $34,975 in 2006 and $31,583 in 2007. The IRS thus disallowed $60,421 of Voss’s claimed deduction in 2006 and $56,685 of his claimed deduction in 2007. The IRS also found Sophy’s returns deficient. The IRS concluded that Sophy was allowed to deduct $38,530 in 2006 and $41,171 in 2007. The IRS thus disallowed $56,866 of Sophy’s claimed deduction in 2006 and $24,443 of his claimed deduction in 2007.
C
Voss and Sophy each filed a petition with the Tax Court, and the two cases were consolidated for joint consideration. The Tax Court granted the parties’ joint motion to submit the cases for decision without trial and on the basis of stipulated facts and exhibits, and directed the parties to submit proposed computations for entry of decision.
Based on the stipulated facts, exhibits, and proposed computations submitted by the parties, the Tax Court reached .a decision and issued an opinion in the IRS’s favor. The Tax Court framed the question presented as “whether the statutory limitations on the amount of acquisition and home equity indebtedness with respect to which interest is deductible under section 163(h)(3) are properly applied on a per-residence or per-taxpayer basis when residence co-owners are not married to each other.” Sophy v. Comm’r, 138 T.C. 204, 209 (2012).
The Tax Court began its analysis by looking to the definitions of acquisition indebtedness and home equity indebtedness in § 163(h)(3)(B)(i) and (C)(i).[2] Id. at 210. The Tax Court noted that the term “any indebtedness” in both definitions is not qualified by language relating to an individual taxpayer (as in “any indebtedness of the taxpayer”). Id. The Tax Court also pointed out that the phrase “of the taxpayer” in the definition of acquisition indebtedness “is used only in relation to the qualified residence [as in “qualified residence of the taxpayer not the indebtedness.” Id.
The Tax Court then examined the definition of qualified residence interest.[3] Id. The Tax Court noted that the phrase “with respect to any qualified residence” in that definition appeared to be superfluous, as acquisition indebtedness and home equity indebtedness were already defined in relation to a qualified residence. Id. at 211. The Tax Court nevertheless found that the phrase was not superfluous because, in its view, “Congress used these repeated references to emphasize the point that qualified residence interest and the related indebtedness limitations are residence focused rather than taxpayer focused.” Id. at 212.
*1057 The Tax Court further reasoned that the married-person parentheticals were consistent with its per-residence interpretation, as the parentheticals made clear that married couples — whether filing separately or jointly — are, as a couple, limited to deducting interest on $1 million of acquisition indebtedness and $100,000 of home equity indebtedness. Id. The purpose of the par-entheticals, the Tax Court explained, was simply
to set out a specific allocation of the limitation amounts that must be used by married couples filing separate tax returns, thus implying that co-owners who are not married to one another may choose to allocate limitation amounts among themselves in some other manner, such as according to percentage of ownership.
Id. at 213.
Noting that nothing in the legislative history of § 163(h)(3) suggested any contrary intention, the Tax Court concluded that “the limitations in section 163(h)(3)(B)(ii) and (C)(ii) on the amounts that may be treated as acquisition and home equity indebtedness with respect to a qualified residence are properly applied on a per-residence basis.” Id.
We have jurisdiction to review the decisions of the Tax Court “in the same manner and to the same extent as decisions of the district courts in civil actions tried without a jury.” 26 U.S.C. § 7482(a)(1). Accordingly, we review the Tax Court’s factual findings for clear error, and we review the Tax Court’s conclusions of law — including its interpretation of the Internal Revenue Code — de novo. Suzy’s Zoo v. Comm’r, 273 F.3d 875, 878 (9th Cir.2001).
III
We are asked to decide an issue of first impression: When multiple unmarried taxpayers co-own a qualifying residence, do the debt limit provisions found in 26 U.S.C. § 163(h)(3)(B)(ii) and (C)(ii) apply per taxpayer or per residence? We conclude that § 163(h)’s debt limits apply per taxpayer.[4]
A
We begin with the text of the key provisions at issue — § 163(h)(3)’s debt limit provisions. They provide:
(B) Acquisition indebtedness.—
(ii) $1,000,000 Limitation. — The aggregate amount treated as acquisition indebtedness for any period shall not exceed $1,000,000 ($500,000 in the case of a married individual filing a separate return).
(C) Home equity indebtedness.—
(ii) Limitation. — The aggregate
amount treated as home equity indebtedness for any period shall not exceed $100,000 ($50,000 in the case of a separate return by a married individual).
Id. § 163(h)(3)(B)(ii), (C)(ii).
The parties dispute whether the $1 million and $100,000 debt limits in these provisions apply per taxpayer or per residence. If they apply per taxpayer, then Voss and Sophy are each entitled to a $1.1 million debt limit, such that together they can deduct interest payments on up to $2.2 million of acquisition and home equity debt. If the debt limit provisions apply per residence, as the Tax Court held, then the $1 million and $100,000 debt limits *1058 must be divided up in some way between Voss and Sophy.
Discerning an answer from § 163(h) requires considerable effort on our part because the statute is silent as to how the debt limits should apply in co-owner situations.[5] Both provisions limit “[t]he aggregate amount treated” as acquisition or home equity debt, but neither says to whom or what the limits apply. Had Congress wanted to make clear that the debt limits apply per taxpayer, it could have drafted the provisions to limit “the aggregate amount each taxpayer may treat as” acquisition or home equity debt. But it did not. Or, had Congress wanted to make clear that the debt limits apply per residence, it could have provided that the debt limits must be divided or allocated in the event that two or more unmarried individuals co-own a qualified residence. Cf. 26 U.S.C. § 36(a)(1)(C) (“If two or more individuals who are not márried purchase a principal residence, the amount of the [first-time homebuyer] credit allowed ... shall be allocated among such individuals in such manner as the Secretary may prescribe, except that the total amount of the credits allowed to all such individuals shall not exceed $8,000”). But, again, it' did not.
Although Congress did neither of these things, we are not altogether without textual guidance. The statute is mostly silent about how to deal with co-ownership situations, but it is not entirely silent. Both debt limit provisions contain a parenthetical that speaks to one common situation of co-ownership: married individuals filing separate returns. See id. § 163(h)(3)(B)(ii), (C)(ii). The parentheti-cals provide half-sized debt limits “in the case of a married individual filing a separate return.” Id.[6] Congress’s use of the phrase “in the case of’ is important. It suggests, first, that the parentheticals contain an exception to the general debt limit set out in the main clause, not an illustration of how that general debt limit should be applied. At the same time, the phrase “in the case of’ also suggests a certain parallelism between the parenthetical and the main clause of each provision: other than the debt limit amount, which differs, we can expect that in all respects the case of a married individual filing a separate return should be treated like any other case. It is thus appropriate to look to the parentheticals when interpreting the main clauses’ general debt limit provisions. These parentheticals offer us at least three useful insights.
First, the parentheticals clearly speak in per-taxpayer terms: the limit on acquisition indebtedness is “$500,000 in the case of a married individual filing a separate return,” id. § 163(h)(3)(B)(ii) (emphasis added), and the limit on home equity indebtedness is “$50,000 in the case of a separate return by a married individual,” id. § 163(h)(3)(C)(ii) (emphasis added). And they speak in such terms even though married individuals commonly (and perhaps usually) co-own their homes and are jointly and severally liable on any mortgage debt. Had Congress wanted to draft the parentheticals in per-residence terms, doing so would not have been particularly difficult. Congress could have written, “in *1059 the case of any qualified residence of a married individual filing a separate return.” Yet, once again, Congress did not draft the statute in that way. The per-taxpayer wording of the parentheticals, considered in light of the parentheticals’ use of the phrase “in the case of,” thus suggests that the wording of the main clause — in particular, the phrase “aggregate amount treated” — should likewise be understood in a per-taxpayer manner.
Second, the parentheticals don’t just speak in per-taxpayer terms; they operate in a per-taxpayer manner. The parenthet-icals give each separately filing spouse a separate debt limit of $550,000 so that, together, the two spouses are effectively entitled to a $1.1 million debt limit (the normal limit for single taxpayers). They do not subject both spouses jointly to the $550,000 debt limit specified in the statute. Were the parentheticals to work in that way, the result would be quite anomalous. Rather than ensuring that a married couple filing separate returns is treated the same as a couple filing a joint return, the parentheticals, under a per-residence reading, would result in disparate treatment of married couples filing separate returns. The separately filing couple would have a $550,000 debt limit, whereas the jointly filing couple, and even the single individual, would have a $1.1 million debt limit.[7]
This is surely not what the statute intended, and we don’t understand the Tax Court or the IRS to say otherwise. Quite to the contrary, both acknowledge that the parentheticals’ lower limits apply per spouse — which is just another way of saying per taxpayer. See Sophy, 138 T.C. at 212 (interpreting the married-person par-entheticals to mean that “married taxpayers who file separate returns are limited to acquisition indebtedness of $500,000 each ” and “to home equity indebtedness of $50,000 each ” (emphasis added)); see also Bronstein v. Comm’r, 138 T.C. 382, 386 (2012) (“[T]he parenthetical indebtedness limitations of section 163(h)(3)(B)(ii) and (C)(ii) are $550,000 for each spouse filing a separate return.” (emphasis added)). And if the debt limits for spouses filing separately apply per spouse, we see no reason in the statute why the debt limits for unmarried individuals should not apply per unmarried individual.[8] The per-taxpayer operation of the debt limits for married individuals filing separately thus suggests that the general debt limits also operate per taxpayer.
Third, and finally, the very inclusion of the parentheticals suggests that the debt limits apply per taxpayer. “It is a well-established rule of statutory construction that courts should not interpret statutes in a way that renders a provision superfluous.” Chubb Custom Ins. Co. v. Space Sys/Loral, Inc., 710 F.3d 946, 966 (9th Cir.2013), cert. denied, — U.S.-, 134 S.Ct. 906, 187 L.Ed.2d 833 (2014). If the $1.1 million debt limit truly applied per residence, as the Tax Court held it does, *1060 the parentheticals would be superfluous, as there would be no need to provide that two spouses filing separately get $550,000 each. If the $1.1 million debt limit applies per taxpayer, by contrast, the parentheticals actually do something: they give each separately filing spouse half the debt limit so that the separately filing couple is, as a unit, subject to the same debt limit as a jointly filing couple.
The Tax Court interpreted the married-person parentheticals differently. The purpose of the parentheticals, according to the Tax Court, is not to lower the debt limits for spouses filing separate returns— the spouses are already jointly subject to the $1.1 million debt limit. Rather, the Tax Court explained,
this language simply appears to set out a specific allocation of the limitation amounts that must be used by married couples filing separate tax returns, thus implying that co-owners who are not married to one another may choose to allocate the limitation amounts among themselves in some other manner, such as according to percentage of ownership.
Sophy, 138 T.C. at 213 (emphasis added).
We find this interpretation unpersuasive. In particular, we think it unlikely that Congress would go out of its way to prevent spouses (and only spouses) from allocating § 163(h)(3)’s debt limit amounts, especially when in most cases spouses presumably own their home as equal partners. The much more likely intent of the paren-theticals, we think, is to ensure that married couples filing a separate return are treated the same, for purposes of § 163(h)(3), as married couples filing a joint return — in other words, to ensure that all married couples, not just joint filers, are treated as though they were a single taxpayer.
Section 163(h)(3) is not the only provision in the Tax Code that does this. Congress has on a number of occasions provided half-sized deductions, credits, or limits for separately filing spouses. See, e.g., 26 U.S.C. § 22(c)(2)(A) (providing an initial credit of $7,500 to a qualifying married couple filing jointly and “$3,750 in the case of a married individual filing a separate return”), id. § 1202(b) (providing that, for purposes of the Code’s exclusion for gain from certain small business stock, the $10 million limitation on eligible gain is reduced to $5 million “[i]n the case of a separate return by a married individual”), id. § 1211(b) (limiting allowable net capital losses to “$3,000 ($1,500 in the case of a married individual filing a separate return)”).
The purpose of these provisions is obvious. In each provision, each taxpayer gets some tax benefit — a credit, an exclusion up to some limit, allowable losses up to some limit, or, here, a deduction on interest on home debt up to some limit. Congress, knowing that joint filers are treated as a single taxpayer and that separate filers are treated as two separate taxpayers, wants to ensure that the separately filing spouses don’t get double the benefit that jointly filing couples get. And so, in each of these provisions, Congress provides that separately filing spouses each get half the benefit. The intent of these provisions is not to prevent separately filing spouses from allocating the benefit; it is to ensure that the separately filing spouses don’t get double the credit, the exclusion, the losses, or the debt limit that the jointly filing couple gets.[9]
*1061 If Congress wants to go farther and ensure that two or more unmarried taxpayers are treated as a single taxpayer for purposes of a particular deduction or credit, it can do that too. And it has. Take § 36 of the Tax Code, for example. That section sets an $8,000 limit on the first-time homebuyer credit but adds two caveats. See id. § 36(b)(1). The first caveat is very similar to (and, indeed, has much of the same language as) the limitation provisions here. The statute states, “In the case of a married individual filing a separate return, subparagraph (A) [the provision containing the $8,000 cap] shall be applied by substituting ‘$4,000’ for ‘$8,000.’ ” Id. § 36(b)(1)(B). But, unlike the limitation provisions here, § 36 does not stop there. It has an additional provision — the second caveat — which states:
If two or more individuals who are not married purchase a principal residence, the amount of the credit allowed ... shall be allocated among such individuals in such manner as the Secretary may prescribe, except that the total amount of the credits allowed to all such individuals shall not exceed $8,000.
Id. § 36(b)(1)(C) (emphasis added).
As § 36 makes clear, Congress knows how to treat a group of unmarried taxpayers as a single taxpayer for purposes of a particular tax benefit or burden. Congress could have done so here, but tellingly it did not. Instead, Congress did what it has done many times before, using the same language it has used before: It eliminated what would otherwise be a significant discrepancy between separately filing and jointly filing married couples by expressly reducing the debt limits for spouses filing separately.
In sum, the married-person parentheti-eals’ language, purpose, and operation all strongly suggest that § 163(h)(3)’s debt limit provisions apply per taxpayer, not per residence. Absent some contrary indication in the statute, then, we shall read the debt limit provisions as applying on a per-taxpayer basis.
B
The Tax Court rejected a per-taxpayer reading of the debt limit provisions because it discerned in § 163(h)(3) a general “focus” on the qualified residence, Sophy, 138 T.C. at 210, and a “'conspicuous! ] absentee]” of “any reference to an individual taxpayer,” id. at 211. Because the debt limit provisions do not speak directly to the situation of unmarried co-owners, it was reasonable for the Tax Court to look beyond those provisions in an effort to understand how the provisions should be applied. Ultimately, however, these other provisions of the statute do not sway us.
The Tax Court focused on three provisions in the statute, all definitions: first, the definition of qualified residence interest as “any interest which is paid or accrued during the taxable year on[ ] acquisition [or home equity] indebtedness with respect to any qualified residence of the taxpayer,” 26 U.S.C. § 163(h)(3)(A) (emphasis added); second, the, definition of acquisition indebtedness as “any indebtedness which[ ] is incurred in acquiring, constructing, or substantially improving any qualified residence of the taxpayerid. § 163(h)(3)(B)® (emphasis added); and third, the definition of home equity indebtedness as “any indebtedness (other than acquisition indebtedness) secured by a qualified residence,” id. § 163(h)(3)(C)® (emphasis added). Sophy, 138 T.C. at 210-11. In each definition, the Tax Court highlighted the reference to the qualified residence and noted that the taxpayer was only ever mentioned with respect to the *1062 residence, not with respect to the indebtedness. Id.
We, however, do not find the statute’s focus on the residence or lack of focus on the taxpayer particularly compelling. As for the repeated references to the residence, it is only natural that a statute providing a deduction on “qualified residence interest” will focus on indebtedness with respect to a qualified residence. Indeed, for the most part, the statute’s references to the “qualified residence” are entirely necessary; take those references out, and the statute would change meaning or make little sense.
The Tax Court did identify a few instances where a prepositional phrase involving the residence (such as “with respect to any qualified residence”) could have been safely omitted and was thus arguably superfluous, id. at 211-12, but the same could be said of other prepositional phrases involving the taxpayer (such as “of the taxpayer”).[10] In all likelihood, these phrases, though technically unnecessary, were included simply to ease the reader’s understanding of a complex tax statute full of technical definitions. (We certainly appreciate their inclusion.) And, in any case, if there is a plausible inference to be drawn from those few stray prepositional phrases, it is overcome by the clear implications of the married-person paren-theticals discussed above. Thus, in our view the statute’s focus on the residence says little about how the debt limit provisions should be applied.
Nor do we find the occasional omission of the word “taxpayer” particularly telling. To begin with, two of the three definitions identified by the Tax Court do refer to the taxpayer, and all three depend on the definition of “qualified residence,” which itself refers to the taxpayer (for more on the definition of “qualified residence,” see the next section below). Setting to the side those references to the taxpayer, it is true that the three definitions identified by the Tax Court — -just like the debt limit provisions in (h)(3)(B)(ii) and (C)(ii) — do not specify who paid the interest, who incurred the indebtedness, and whose indebtedness was secured by a qualified residence. But when we look at the rest of § 163 (and, we suspect, the rest of the Tax Code), the omission of the word “taxpayer” is anything but conspicuous. Note, for example, how the word “taxpayer” is missing from the first line of § 163, which states, “There shall be allowed as a deduction all interest paid or accrued within the taxable year on indebtedness.” Id. § 163(a). There is no need for the sentence to say, “There shall be allowed as a deduction to the taxpayer all interest paid by the taxpayer within the taxpayer’s taxable year on the taxpayer’s indebtedness.” Any reasonable reader would understand that the statute is speaking of a taxpayer.
Or take the first line of § 163(h). It states that “no deduction shall be allowed *1063 under this chapter for personal interest paid or accrued during the taxable year.” Id. § 163(h)(1). Again, the reader easily intuits that the statute refers to a taxpayer’s deduction, a taxpayer’s personal interest payments, and a taxpayer’s taxable year. Indeed, there can be no doubt that is what (h)(1) means because the statement just quoted follows the phrase, “In the case of a taxpayer other than a corporation.” Id. (emphasis added).
Thus, although we do not fault the Tax Court for looking to other provisions in the statute for guidance, we would place little weight on the statute’s general focus on the residence or its repeated omission of reference to the taxpayer. If anything, these other provisions reinforce our per-taxpayer reading; they reveal that the debt limit provisions’ omission of the word “taxpayer” is actually quite ordinary in the context of the broader statute.
C
Not only does nothing in the statute compel the Tax Court’s per-residence reading; several of the statute’s provisions point the other way. We have already noted one example: by speaking and operating in a per-taxpayer manner, the married-person parentheticals suggest that the general debt limits also apply per taxpayer. Two other provisions also warrant attention.
First, we are guided by the statute’s repeated references to a single “taxable year.” Section 163(h) begins by stating that “no deduction shall be allowed under this chapter for personal interest paid or accrued during the taxable year.” Id. § 163(h)(1) (emphasis added). Likewise, § 163(h)(3) begins by defining qualified residence interest as any interest on acquisition or home equity debt “which is paid or accrued during the taxable year.” Id. § 163(h)(3)(A). Indeed, the very provisions at issue, the debt limit provisions, cap the allowable amount of home debt “for any period” — the word “period” clearly referring to the “taxable year” mentioned earlier in (h)(3). Id. § 163(h)(3)(B)(ii), (C)(ii).
Residences do not have taxable years; only taxpayers do. And, importantly, taxpayers can have different taxable years. See 26 U.S.C. § 441(b) (providing that a taxpayer’s taxable year may vary depending on the taxpayer’s annual accounting period). Yet § 163(h) speaks in terms of a single taxable year, thus implying that the debt limits apply per taxpayer. If Congress truly intended to imply that § 163(h)(3)’s debt limits apply per residence by broadly focusing on the residence and consistently ignoring the taxpayer, it seems unlikely to us that it would at the same time define qualified residence interest with respect to a single taxable year.
Moreover, it is unclear how co-owners with different taxable years could even determine “[t]he aggregate amount treated as acquisition indebtedness for any period” under a per-residence approach. Does one co-owner’s tax period control? Or do the co-owners have to figure out ' some way of accounting for both tax periods? (Keep in mind that mortgage balances usually change monthly.) These difficult questions go away, however, when the debt limits are read to apply per taxpayer. Each co-owner simply determines the interest paid and the average mortgage debt during his or her own tax period.
The Tax Court’s per-residence reading is also hard to square with the statute’s definition of “qualified residence.” Somewhat counter-intuitively, the term “qualified residence” can include one or two residences: “the principal residence (within the meaning of section 121) of the taxpayer,” and “1 other residence of the taxpayer which is selected by the taxpayer for *1064 purposes of this subsection for the taxable year and which is used by the taxpayer as a residence (within the meaning of section 280A(d)(l)).” Id. § 163(h)(4)(A)®.. Contrary to the Tax Court’s per-residence reading of the statute, the term “qualified residence” clearly focuses on the taxpayer. The term includes the principal residence “of the taxpayer” and one other residence “of the taxpayer” that is “used by the taxpayer as a residence” and is “selected by the taxpayer.” Id. The term also specifies that the taxpayer may select the secondary residence “for the taxable year,” id., suggesting that a taxpayer who owns multiple secondary residences can change his or her “1 other residence” from one tax year to the next.
More than just focusing on the taxpayer, the term “qualified residence” also highlights the impracticality of the Tax Court’s approach. As the term “qualified residence” is defined, it is entirely possible that two residence co-owners might each have a different “qualified residence.” For example, two individuals might each have a separate primary residence but go in together on a vacation home in Maui. For such co-owners, filing tax returns under the Tax Court’s per-residence approach would be like running a three-legged race. The co-owners are tied together for one home but not the other. This would mean that the two (or it could be three or four) co-owners would have to coordinate their tax returns to ensure that the aggregate amount of acquisition debt for each taxpayer’s “qualified residence” does not exceed $1 million. It would also mean that one co-owner’s deduction might depend on the size of another co-owner’s mortgage on a home in which the first co-owner has no interest. Under a per-taxpayer approach, by contrast, determining the amount of acquisition debt is free of such difficulties. Each taxpayer can calculate the deduction with reference to his or her respective two residences.
These provisions — the married-person parentheticals, the repeated references to the single “taxable year,” and the taxpayer-specific definition of “qualified residence” — are at odds with the Tax Court’s per-residence reading of § 163(h)(3). Each provision focuses on the individual taxpayer, and the impracticality of applying the provisions under a per-residence approach suggests that Congress never intended that approach. We thus conclude that a per-taxpayer reading of the statute’s debt limit provisions is most consistent with § 163(h)(3) as a whole.[11]
IV
The IRS argues that applying § 163(h)(3)’s debt limit provisions on a per-taxpayer basis creates a marriage pen *1065 alty. We agree that it does, but we do not believe the marriage penalty is as significant a concern as the IRS urges.
Congress may have had perfectly legitimate reasons for distinguishing between married and unmarried taxpayers. Married individuals, unlike unmarried individuals, have the option under the Tax Code of filing a joint return. This option offers significant benefits — in particular, lower tax rates at various levels of income. But it’s not all honeymoon; filing jointly also comes with certain drawbacks. A couple filing a joint return might, for example, receive one $1,000 tax credit where the same couple filing separate tax returns might receive two $1,000 credits. It would appear that, in Congress’s view, the home mortgage interest deduction is one such drawback. If two individuals who are engaged to be married each own their own house and each have their own $1 million mortgage, both get to deduct all of their interest. But if they get married and file a joint return, they are treated as one taxpayer and can then only deduct half of their interest. See Pan, 73 T.C.M. (CCH) at 1819, 1826. This is a marriage penalty, but Congress presumably allows the marriage penalty because the couple also receives offsetting benefits available only to married couples filing a joint return.
Of course, a married couple filing separate returns does not receive the benefits of filing a joint return. Is it unfair, then, that they are treated as a single taxpayer while the unmarried couple is not? Perhaps not, for. the married couple, unlike the unmarried couple, can usually elect to file a joint return. And perhaps Congress did not want separately filing married couples to have a significant advantage over jointly filing married couples.
We have already explained that the apparent purpose of the married-person par-entheticals is to ensure that married couples are treated as a single taxpayer for purposes of the home mortgage interest deduction regardless of whether they file separately or jointly. And the same purpose is evident in other provisions as well. For example, the statute provides that married couples filing separate returns generally “shall be treated as 1 taxpayer” for purposes of the definition of qualified residence. 26 U.S.C. §. 163(h)(4)(A)(ii)(I). Like the debt limit provisions, this provision does not explicitly say whether the same is true of married couples filing a joint return, but we can reasonably infer that Congress also intended to treat jointly filing couples as a single • taxpayer. See IRS Field Service Advisory No. 200137033 (Sept. 14, 2001) (opining, non-precedentially, that “[although § 163(h)(4)(A) does not specifically state that a married couple filing jointly is treated as one taxpayer for purposes of determining their mortgage interest deductions, we assume that Congress did not intend to treat married couples filing jointly differently than married couples filing separately”). ■
We thus agree that the debt limit provisions of § 163(h)(3) result in a marriage penalty; but we are not particularly troubled. Congress may very well have good reasons for allowing that result, and, in any event, Congress clearly singled out married couples for specific treatment when it explicitly provided lower debt limits for married couples yet, for whatever reason, did not similarly provide lower debt limits for unmarried co-owners.
V
The dissent urges us to defer to the IRS’s interpretation of the statute in a 2009 Chief Counsel Advice memorandum. Dissent at 1071-72. The memorandum, like the Tax Court below, adopts a per-residence interpretation of §' 163(h)(3)’s debt limit provisions. Its statutory analysis consists of one paragraph, which reads:
*1066 Under § 163(h)(3)(B)(i), .acquisition indebtedness is defined, in relevant part, as indebtedness incurred in acquiring a qualified residence of the taxpayer — not as indebtedness incurred in acquiring [a] taxpayer’s portion of a qualified residence. The entire amount of indebtedness incurred in acquiring the qualified residence constitutes “acquisition indebtedness” under § 163(h)(3)(A)(i).... [UJnder § 163(h)(3)(B)(ii), the amount treated as acquisition indebtedness for purposes of the qualified residence interest deduction is limited to $1,000,000 of total, “aggregate” acquisition indebtedness. This is evident from the parenthetical in § 163(h)(3)(B)(ii) which limits the aggregate treated as acquisition indebtedness to $500,000 for a married taxpayer filing a separate return.
IRS Chief Counsel Advice No. 200911007, at 4 (Mar. 13, 2009).
As the dissent acknowledges, the IRS’s Chief Counsel Advice is only entitled to the “measure of deference proportional to the ‘thoroughness evident in its consideration, the validity of its reasoning, its consistency with ■ earlier and later pronouncements, and all those factors which give it power to, persuade.’ ” Christopher v. SmithKline Beecham Corp., — U.S.-, 132 S.Ct. 2156, 2168-69, 183 L.Ed.2d 153 (2012) (quoting United States v. Mead Corp., 533 U.S. 218, 228, 121 S.Ct. 2164, 150 L.Ed.2d 292 (2001)); see also Christensen v. Harris Cnty., 529 U.S. 576, 587, 120 S.Ct. 1655, 146 L.Ed.2d 621 (2000) (“Interpretations such as those ... in policy statements, agency manuals, and enforcement guidelines, all of which lack the force of law — do not warrant Chevron-style deference.”).
A review of these factors suggests the 2009 Chief Counsel Advice should be given limited weight. To start, the 2009 Chief Counsel Advice is hardly thorough or exhaustive — its analysis interpreting how the statute should apply to unmarried co-owners consists of just one paragraph. It treats the question as one governed by the “plain language of the statute,” IRS Chief Counsel Advice No. 200911007, at 4, yet as our exchange, the briefs of the parties, the Tax Court’s decision, and the statute itself demonstrate, it is anything but “plain.” The Chief Counsel Advice does not grapple with the statute’s taxpayer-specific definition of “qualified residence” or repeated references to a taxpayer’s taxable year, nor does it explain how the married-person parenthetical is anything but surplusage under a per-residence reading of the statute. ■
As for consistency, the situation here is a far cry from that in Hall v. United States, — U.S.-, 132 S.Ct. 1882, 1890, 182 L.Ed.2d 840 (2012), a case the dissent cites. See Dissent at 1069 n. 2. In Hall, the Supreme Court “s[aw] no reason to depart from those established understandings” of bankruptcy courts, bankruptcy commentators, and the IRS’s consistent position for over a decade in an IRS Chief Counsel Advice memorandum, the Internal Revenue manual, and an IRS Litigation Guideline Memorandum. See Hall, 132 S.Ct. at 1889-90. Here, by contrast, there is no comparable consensus. Aside from the IRS’s litigation position in this case, it appears that the 2009 Chief Counsel Advice — which is just six years old — is the IRS’s only pronouncement addressing how § 163(h)(3)’s debt limits apply to unmarried co-owners.[12] The agency’s guidance is *1067 closer to a “mere[ ] ... litigating position” than to an “agency interpretation of ‘longstanding’ duration.” Dissent at 1071 (quoting Alaska Dep’t of Envtl. Conservation v. EPA 540 U.S. 461, 487-88, 124 S.Ct. 988, 157 L.Ed.2d 967 (2004)).
Even putting all that aside, we are not persuaded by the reasoning in the IRS’s 2009 guidance. The 2009 Chief Counsel Advice reasons that “acquisition indebtedness” is defined in the statute “as indebtedness incurred in acquiring a qualified residence of the taxpayer — not as indebtedness incurred in acquiring [a] taxpayer’s portion of a qualified residence,” and concludes that unmarried co-owners are “limited to $1,000,000 of total, ‘aggregate’ acquisition indebtedness.” IRS Chief Counsel Advice No. 200911007, at "4. But this begs the question. As we have explained, although the statute limits “[t]he aggregate amount treated” as acquisition or home equity debt, it does not say to whom or what the limits apply.
Indeed, we are not convinced the dissent is fully persuaded by the 2009 Chief Counsel Advice either. Although the dissent extols the IRS’s “reasonable and persuasive” “position,” Dissent at 1071, the dissent only briefly discusses the Chief Counsel’s actual reasoning. And as for the IRS’s arguments on appeal, the dissent shies away from the IRS’s principal argument — i.e., that “the focus of the statute is on the residence, not on the taxpayer.” We have explained (in Part III.B) why this argument fails, yet the dissent offers no response.
What is more, in one important respect, the dissent rejects the IRS’s interpretation. According to the dissent, the married-person parenthetical is not superfluous because it imposes a “statutory penalty” on married individuals who decide to file separately. Id. at 1074. Under this view, two unmarried co-owners are entitled to a total debt limit of $1.1 million, a married couple filing jointly is entitled to a total debt limit of $1.1 million, and even a single individual is entitled to a total debt limit of $1.1 million— but a married couple filing separately is entitled to a total debt limit of $550,000. See id. at 1073.
To our knowledge, however, neither the IRS nor the Tax Court has ever adopted the dissent’s interpretation. As the IRS explained in its brief on appeal, “The parenthetical language in the acquisition indebtedness limitation in § 163(h)(3)(B)(ii) provides that married taxpayers who file separate returns are limited to acquisition indebtedness of $500,000 each.” (Emphasis added.) Accord Sophy, 138 T.C. at 212 (“[M]arried taxpayers who file separate returns are limited to acquisition indebtedness of $500,000 each....” (emphasis added)); Bronstein, 138 T.C. at 386 (“[T]he parenthetical indebtedness limitations ... are $550,000 for each spouse filing a separate return.” (emphasis added)); IRS Chief Counsel Advice No. 200911007, at 4 (explaining that the per-residence operation of the $1 million limit on acquisition indebtedness “is evident from the [married-person] parenthetical,” thus implying that each separately filing spouse gets a separate $500,000 aggregate debt limit). On this issue there is a consensus, and the dissent is on the wrong side.
At bottoni, although an IRS Chief Counsel Advice statement “is helpful in determining the position of the IRS,” it is an internal IRS memorandum prepared by an individual IRS attorney. Wells Fargo & Co. v. United States, 119 Fed.Cl. 27, 38 (2014). The document itself cautions that it “may not be used or cited as precedent.” IRS Chief Counsel Advice No. 200911007, at 1. Indeed, the IRS could issue a memorandum taking the opposite position tomorrow, “apparently without revoking the *1068 earlier guidance.” Wells Fargo, 119 Fed.Cl. at 38 n. 12.
Every factor the dissent says we should consider suggests that the IRS’s interpretation should not be given significant weight. Having considered the IRS’s reasoning as set out in the 2009 Chief Counsel Advice and the IRS’s briefs on appeal, we decline to adopt its interpretation.
VI
We hold that 26 U.S.C. § 163(h)(3)’s debt limit provisions apply on a per-taxpayer basis to unmarried co-owners of a qualified residence. We infer this conclusion from the text of the statute: By expressly providing that married individuals filing separate returns are entitled to deduct interest on up to $550,000 of home debt each, Congress implied that unmarried co-owners filing separate returns are entitled to deduct interest on up to $1.1 million of home debt each. We accordingly reverse the Tax Court’s decision and remand for the limited purpose of allowing the parties to determine, in a manner consistent with this opinion, the proper amount of qualified residence interest that petitioners are entitled to deduct, as well as the proper amount of any remaining deficiency.
REVERSED and REMANDED.

. The regulation is silent as to how the deduction should be calculated in co-owner situations.

. “Acquisition indebtedness” is defined as "any indebtedness which (I) is incurred in acquiring, constructing, or substantially improving any qualified residence of the taxpayer, and (II) is secured by such residence.” 26 U.S.C. § 163(h)(3)(B)(i). “Home equity indebtedness” is defined as “any indebtedness (other than acquisition indebtedness) secured by a qualified residence to the extent the aggregate amount of such indebtedness does not exceed (I) the fair market value of such qualified residence, reduced by (II) the amount of acquisition indebtedness with respect to such residence.” Id. § 163(h)(3)(C)®.

. "Qualified residence interest” is defined as "any interest which is paid or accrued during the taxable year on ... acquisition indebtedness [or home equity indebtedness] with respect to any qualified residence of the taxpayer.” Id. § 163(h)(3)(A).

. The parties agree that both of petitioners’ homes are qualified residences under § 163(h)(4)(A)(i), that both refinanced mortgages qualify as acquisition indebtedness under § 163(h)(3)(B)(i), and that petitioners' home equity line of credit qualifies as home equity indebtedness under § 163 (h) (3) (C)(i).

. The relevant Treasury regulation, 26 C.F.R. § 1.163-1OT, is also silent in this regard. The regulation provides a method of calculating qualified residence interest when the home debt exceeds the applicable debt limits in the statute, see id. § 1.163-10T(e), but it says nothing about how qualified residence interest should be calculated when there are multi-pie co-owners, whether married or unmarried.

. For no apparent reason that we can tell, (C)(ii)’s parenthetical is worded differently. It states, "$50,000 in the case of a separate return by a manied individual.” 26 U.S.C. § 163(h)(3)(C)(ii) (emphasis added).

. See Pau v. Comm’r, 73 T.C.M. (CCH) 1819, 1826 (1997) (holding that a married couple filing a joint return can deduct "interest paid on $1 million of acquisition indebtedness").

. The dissent does not disagree with this logic. See Dissent at 1073 (noting that if the married-person parenthetical were interpreted in a per-taxpayer manner, "married taxpayers filing separately would deduct the same amount of interest as married taxpayers filing jointly”). Instead, the dissent attacks our premise — i.e., that the married-person parenthetical operates per taxpayer, not per residence. See id. at 1073-75 (interpreting the married-person parenthetical as imposing a "penalty on married individuals for filing separately” by limiting separately filing spouses to a combined debt limit of $550,000). As we have explained, however, the dissent's view runs contrary not only to-the statute's text ("in the case of a married individual filing a separate return”) but also to the IRS's own uncontested interpretation of the statute.

. That said, Congress usually accomplishes this purpose by giving each spouse half the tax benefit that the jointly filing couple gets. That may mean that if a married couple has a large mortgage and files separate returns, but only one spouse seeks the benefit, the couple may, all counted, only get half the benefit it would have received had the couple filed jointly. See, e.g., Bronstein, 138 T.C. at 384, 386 (holding that the clear language of *1061 § 163(h)(3) limited a spouse filing a separate return to $550,000 of debt even though she paid all of the mortgage interest and her husband was unable to seek the deduction).

. The statute's definition of qualified residence interest is instructive. The statute defines that term to include interest on "acquisition indebtedness with respect to any qualified residence of the taxpayer." 26 U.S.C. § 163(h)(3)(A)(i) (emphasis added). As the Tax Court pointed out, Sophy, 138 T.C. at 211, the phrase “with respect to any qualified residence” appears to be redundant because acquisition indebtedness is defined as indebtedness "incurred in acquiring ... any qualified residence of the taxpayer," 26 U.S.C. § 163(h)(3)(B)(i) (emphasis added). Notably, however, the phrase "of the taxpayer” is also unnecessary because qualified residence is defined as "the principal residence ... of the taxpayer " and "[one] other residence of the taxpayer." Id. § 163(h)(4)(A)(i) (emphasis added). Indeed, "of the taxpayer” is twice redundant: it is unnecessarily included in both the definition of qualified residence interest and the definition of acquisition indebtedness.

. As the Treasury regulation's formula set out in 26 C.F.R. § 1.163-10T(e) only addresses the situation of a single taxpayer, the formula may need to be adjusted to account for the situation of separately filing co-owners, whether married or unmarried. See Dissent at 1073 (suggesting that, if married individuals filing separately are to receive the same combined debt limit as a married couple filing jointly, the IRS would presumably have to “allow [each] married taxpayer filing separately to deduct his or her own interest payments on the debt in the proportion of $550,000 divided by one half of the total debt secured by the qualified residence”). We leave it to the IRS to develop in the first instance a workable methodology for separately filing co-owners.
The dissent also disputes our conclusion that the regulation fails to address the situation presented here, relying on the IRS’s conclusion "that the regulation does apply to co-owners.” Dissent at 1069 n. 1 (citing IRS CCA 200911007, 2009 WL 641772). But whether the IRS has interpreted its own regulation in this manner is of little import where its reasoning for doing so is a short-shrift interpretation of a statute in an opinion lacking the force of law. See Maj. Op. at 1066.

. Pointing to 26 C.F.R. § 1.163-10T(e), the dissent says "the IRS has applied its expert interpretation of § 163(h) consistently for many years." Dissent at 1072. Yet the dissent does not dispute that § 1.163-10T(e) is completely, silent as to unmarried co-owners (or any co-owners, for that matter). The 2009 Chief Counsel Advice is the one and only IRS pronouncement on the issue before us.